Ex parte Croom & May.

---

# Ex parte CROOM & MAY.

1. A prisoner charged with a capital offence, after having been refused bail by a Circuit Judge, on application by *habeas corpus*, may petition the Supreme Court for a revision of the decision of the Circuit Judge.

2. The proper practice in such case is, for the prisoner to petition the Supreme Court for the writ of *habeas corpus* and such other remedial process as may be necessary to render its control effectual, setting forth under oath such a state of case as will show that the Circuit Judge erred to his prejudice, and that he was entitled by the case then made to the relief which he seeks.

·3. If the Supreme Court deems the showing *prima facie* sufficient to entitle the prisoner to bail, the writs of *habeas corpus* and *certiorari* will be awarded, to bring before the Supreme Court the body of the prisoner and the proceedings had before the Circuit Judge, that if, upon a full hearing on the return of the writs, the prisoner should be adjudged entitled to bail, he may be allowed to give bail in such sum as may be prescribed.

4. Instead of the writs of *certiorari* and *habeas corpus* issuing from the Supreme Court, an agreed statement of the facts and proceedings had before the Circuit Judge may be submitted by the counsel for and against the prisoner, and if the Supreme Court decides that the prisoner is entitled to bail, application may again be made to the Circuit Judge.

·5. The fortieth section of the eighth chapter of the Penal Code, [Clay's Digest, 444,] by which it is enacted that if the defendant in capital cases is not tried at the first term at which he is properly triable, on account of any of the causes therein specified, he shall not be entitled to bail as a matter of right, *but that he may claim to be discharged on bail if he is not tried at the second term,* unless the failure is occasioned by his own fault or misfortune, or on his application, or with his assent, is not repugnant to the seventeenth section of the first article of the constitution, by which it is declared, that "all persons, before conviction, shall be bailable by sufficient securities, *except for capital offences where the proof is evident, and the presumption great.*"

·6. The word "term," as used in the fortieth section of the eighth chapter of the Penal Code, [Clay's Dig. 444,] means *the period of time prescribed by law during which the Court is required to be held,* unless the business is sooner disposed of, *and not the time during which the court may actually be in session.*

7. A prisoner charged with a capital offence, who makes application to be discharged on bail, on account of an unauthorized premature adjournment of the court at the first term at which he was properly triable, without any disposition having been made of his case, makes out a *prima facie* case for relief, by showing that he was arrested and in the custody of the sheriff before the adjournment of court, that the judge adjourned the court, *sine die,* before the expiration of the period allowed by law for holding it, and while there was business on the docket undisposed of, that no disposition was made of his own case, that no cause for the adjournment was assigned in the order, and that none appears in the record. When no cause for the premature adjournment is assigned on the record, the appellate court will not presume that a sufficient cause existed, nor will it require the prisoner to prove that a sufficient cause did not exist.

·8. A prisoner in such case may insist on his right to be discharged on

bail on account of such premature unauthorized adjournment, although at the time of adjournment he was confined in the custody of the sheriff, at a place several miles distant from the court-house, and the sheriff was advised by physicians that it was unsafe to remove him on account of his wounds, and although he made no application for a trial, and might have continued his trial on account of his situation.

9. A general order of continuance of all causes not otherwise disposed of, if made at the suggestion, or with the consent of the parties, or their counsel, would operate as a continuance entered in each case by consent, and would be a completion of the business of the court justifying its adjournment.

Motion for writ of *habeas corpus*, and such other remedial process as might secure the discharge of the petitioners on bail.; the Hon. W. R. Smith having refused them bail.

Clarke & Murphy, for petitioners.

Smith & Garrott, *contra* :

1. The papers accompanying the petition do not present the case in such form that this court can revise the decision of the court below. The certificate of the judge does not describe the transcript with sufficient particularity to identify it.—Minor's Ala. 413; 12 Ala. 58. There is nothing to connect the certificate of the judge with the petition. Neither one contains any reference to the other. There is then no record before the court upon which they can review the decision of the circuit judge.

Again : the circuit judge cannot refer any question to this court, as novel and difficult, until final judgment has been rendered thereon.—Clay's Dig. 294 § 32; ib. 469 § 1; Minor's Ala. 266; 6 Ala. 58. The certificate of the judge cannot be treated as a bill of exceptions. No exception appears to have been taken to the ruling of the judge, and no error can be assigned thereon.—3 Stew. 343; 11 Ala. 732; 18 ib. 519.

2. If the case is not presented in proper form for revision, can this court take original jurisdiction of it? This question was directly made, and decided adversely to the petitioners, in *ex parte* Simonton, 9 Por. 383; see also Mansony, *ex parte*, 1 Ala. 98.

3. But if it is decided that the case, as presented, may be reviewed by this court, then we contend that the several acts of

1807, 1827, and 1841, which are relied on by the petitioners, are unconstitutional. The manifest construction of the seventeenth section of the first article of the constitution is, that bail is not allowable to prisoners in capital cases, if the proof is evident, or the presumption great. It is contended for the prisoners, that, as by the common law all persons, before conviction, were bailable in the discretion of the court to whom application was made, it was intended by this clause of the constitution to secure the right to bail absolutely in all cases except those accused of capital offences, and to leave it, as at common law, discretionary with the court in capital cases. If that was the intention, it was not necessary to say any thing on the subject, and the cases would then have stood as at common law.

But if we admit that this clause leaves it discretionary with the judge to grant or refuse bail, still *it must be seen* that this discretion is limited to the determination of the question as to the guilt or innocence of the prisoner. The language is plain, "all persons shall be bailable," &c., "except for capital offences where the proof is evident, or the presumption great." The Legislature cannot enlarge, add to, restrict or subtract from any constitutional provision. These acts, then, are unconstitutional, for they make the prisoner's right to bail depend on the length of time he has been in jail, and not on the question of his guilt or innocence.

Again: at common law prisoners were bailable at the discretion of the judge before whom they were arraigned. If these cases are left by the constitution as at common law, then these acts are unconstitutional because they attempt to limit that discretion. The Legislature has nothing to do with the "proof;" that belongs to the courts.

4. But if the acts are constitutional, they must be construed together, and the prisoners have not placed themselves in such a condition as to give them the benefit of the statutes. The language of the acts of 1807 and 1827, is, "if any person shall be committed," &c., that is, imprisoned, not arrested simply. The prisoners in this case were not committed until the 20th April, two days after the adjournment of the court. The acts further provide, that "if any person shall be committed," &c., "and shall not be indicted and tried at or before the next stated term," &c. He must first be committed, and then, "if not tried at the

next stated term;" may be entitled to bail under the provisions of the act. The next term cannot mean the term at which he is committed.

5. Again, we contend that under the act of 1841, a prisoner's case does not become "triable," until he appears in court, is arraigned for trial, and pleads to the indictment. It may be that he will plead guilty, and then there would be no *trial* at all. He cannot be tried without being personally present in court, although he may be in the custody of an officer.

6. These statutes were intended for the benefit of the prisoners. They must make application for the benefit of them. The courts cannot, and will not force them. They must themselves be the actors.—Stat. 31, Car. 2; Toulmin's Dig. 662, § 5; see also Simonton, *ex parte*, 9 Por. 390. The prisoners in this case made no motion in the Circuit Court, and they cannot now avail themselves of the benefit of the act of 1841.

7. But the prisoners contend that there was a premature unauthorized adjournment of the court, which entitles them to bail. The Circuit Court is a court of general jurisdiction, and every intendment must be made in favor of the correctness. An order of continuance is a judgment to which this rule will apply. The record shows a general order of continuance of all causes not otherwise disposed of. The testimony of the clerk cannot be received to show that there was "considerable business on the docket undisposed of," and thus contradict the record. If injury was done to the other parties whose causes were thus continued under the general order, the prisoners cannot complain of it. The court could do nothing in the absence of the prisoners, and the proof shows that they were lying dangerously wounded, at Greensboro'. It was their duty to apply to the court for the benefit of the statute, and not the duty of the court to force it upon them. If the situation of the prisoners rendered it unsafe to remove them, it was their "misfortune," and their case comes within the express proviso of the act of 1841.

8. The "term" of the court means the time that the court is actually in session, and not the time it may sit.—*Ex parte* Jos. Santee, 2 Vir. Cases, 363; Bouv. Law. Dic. vol 2, 558.

9. If the acts of 1807 and 1827 are unconstitutional, no length of time can prevent the objection from being raised.—Commonwealth v. Parker, 2 Pick. 557.

CHILTON, J.—This case has been elaborately and ably argued, and I proceed with all possible brevity to announce the conclusion which the court has attained upon the questions presented.

And, first, as to the manner in which this court shall take cognizance of the petitioners' application, so as not to render its proceeding obnoxious to the provision of the constitution, which denies to it any other than appellate jurisdiction. The petitioners are in jail, under an arrest upon a *capias*, for murder. They petitioned the Hon. W. R. Smith to be allowed bail, which, upon trial of their alleged right on *habeas corpus*, he denied them. His refusal gives them the right to come into this court to ask the control or supervision of the action of the Circuit Court—(*Ex parte* Simonton, 9 Por. 383)—for without such action, either in refusing to entertain their application or to grant. it, previously had before some court or judge competent to act in the premises, we should, in such case, have nothing to revise; therefore the granting of the writ would not be appellate jurisdiction. But the writ, when granted, would only bring the bodies of the prisoners before this court, together with the cause of their detention, which is the *capias*, and not the proceedings. had before Judge Smith on their application for bail, and which we must revise, or our action in the premises is original. It is the duty of this court, in order to enable it to carry out the powers with which the constitution invests it, of exercising " a general superintendence of inferior jurisdictions," to adopt such course of proceeding as will make its control complete.—*Ex parte* Chaney, 8 Ala. 424. It is important that the practice in such cases should be settled, and after the best deliberation which we have been enabled to bestow upon this branch of the case, we conceive the correct practice to be, for the prisoners, who conceive themselves aggrieved by the decision of the inferior jurisdiction, in the matter of their discharge, to petition this court for the writ of *habeas corpus*, and such other remedial process as shall be necessary to render its control effectual, setting forth under oath such a state of case as shows that the court or the judge who made the decision erred to their prejudice, and that they are entitled by the case made before such inferior tribunal, to the relief which they seek. In such cases as the present, should this court deem the showing sufficient *prima facie* to en-

title the prisoners to bail, the writ of *certiorari* would be ordered to issue to bring up the proceedings had before the judge or court below, as well as the writ of *habeas corpus* to bring the prisoners before this court, that if, upon a full hearing on the return of the writs, this court should adjudge them entitled to bail, they may be allowed to give bail in such sum as might be prescribed.

It would, however, be necessary, in cases where the prisoners desire to revise the action of the inferior court, to have the facts upon which they invoke its action set out in writing and certified by the judge, so that the same may be returned to this court as the basis of its action. Such was the practice adopted by this court, in Field v. Milly Walker, 17 Ala. 80, where we were called upon to revise the decision of the Judge of the County Court, made upon a *habeas corpus ;* and it appears to be the practice which obtains in the Court of Queen's Bench in England, (see Queen v. Dunn, 12 Ad. & E. 599 ; S. C., 40 Eng. C. L. 124,) to issue the writ of *habeas corpus* and a *certiorari.*

It would be much more convenient, however, both to the parties and to this court, for the Attorney General or those representing the State, and the counsel for the prisoners, to agree upon the case made before the inferior court, so that when the opinion of this court is pronounced on the application for the writ, if the accused, according to the principles settled by it, is entitled to be discharged, he may renew his application to the court below, saving thus the delay and expense consequent upon further proceedings to be had in this court, and the necessity for bringing the prisoners in person before us. Such was the practice indicated in *Ex parte* Stiff, 18 Ala. 464.

Objection in this case is made to our considering the transcript of the record, and the facts stated by the circuit judge as a part of the case made below, for want of sufficient evidence of their identity with the cause. The objection can avail nothing, upon the preliminary inquiry as to whether we will award the writ; for the sworn petition sets forth the existence of such facts, and we must, for the purpose of this investigation, assume that they would be returned by the inferior tribunal, in answer to the *certiorari,* as a portion of the case, and thus be sufficiently identified.

We now turn to the main inquiry, which is, whether from the petitioners' own showing they are entitled to the relief which

they seek; for if they are not, this court will not award the writ.
3 B. & A. 420.

The facts, as presented to the circuit judge, and which appear from the transcript of the record above named, and the statement of them certified by the judge, may be thus briefly stated: The regular term of the Circuit Court for Greene county commenced on Monday the 7th day of April, 1851, but the judge of the court did not arrive at the court until Wednesday following; on that day the court commenced its session, and on Saturday of the first week of the term, the grand jury returned into court an indictment, endorsed by the foreman, "a true bill," against the petitioners, for the murder of Elijah W. Harris, and it was ordered that a *capias* issue for their arrest; on Monday of the second week of the term, being the 14th day of April, 1851, a *capias* issued for their arrest, commanding that they should be brought before the court then sitting. This *capias* was returned into court before its final adjournment, endorsed as follows: "Platt S. Croom and Pleasant May, arrested and under guard.—April 15th, 1851, (signed) O. M. BIRCHETT, sheriff of Greene county, by WM. M. BIRCHETT, D. S."

It appears by the testimony of the deputy sheriff, that he held the prisoners in custody under this *capias*, until their delivery to the jailor at Eutaw, on the 20th of April, and that the reason why he did not bring them from Greensborough to Eutaw sooner was, that he was advised by several medical gentlemen that it would be unsafe to remove them earlier, on account of their wounds; but that the prisoners said nothing to him respecting their removal. Between the time of their arrest and commitment to the jail, and while they were in custody of the deputy sheriff at Greensborough, to-wit, on Friday of the second week of the term, being the 18th day of April, the circuit judge adjourned the court, leaving a considerable portion of the business of the court undisposed of, but which was continued by a general order, which he caused to be entered on the record. On the day after the court adjourned, an *alias capias* issued against the prisoners, requiring the sheriff, &c., to take their bodies and have them before the Judge of the next Circuit Court to be holden for Greene county, on the second Monday after the fourth Monday in September then next. On this *capias* the sheriff of Greene, by the same deputy, returned that the prisoners were

arrested and carried to jail—dated 19th April, 1851. The clerk of the Circuit Court testified that the Circuit Court was not adjourned in consequence of the sickness of the judge, or of his family, and that there was no particular cause assigned for the adjournment. The trial docket of the Circuit Court, as also the *venire facias* for the jury for the third week of the term, duly executed on the persons selected as jurors, were presented before the judge below on the trial for bail. The docket showed the causes undisposed of when the court adjourned. Upon the foregoing state of facts, the prisoners moved the court for bail, as a matter of right, and the same being denied them, they now insist upon their right in this court. They claim the right to be discharged on bail, under the 40th section of the 8th chapter of the Penal Code, which provides that "No person charged with the commission of an offence capitally punished, shall be admitted to bail as a matter of right, when he is not tried at the first term of the court, at which he was properly triable, if the failure to try his cause proceeded from the non-attendance of the State's witnesses, when an affidavit is made satisfactorily accounting for their absence, or where there is an entire failure to hold the court, or where the trial is delayed in consequence of the sickness of the judge, or some member of his family, or where there is a premature adjournment of the court for either of the last mentioned, or other sufficient cause; or where the judge from any cause is legally incompetent to try the accused, or where the term allowed by law is so short, that the case of the accused, according to the accustomed course of proceeding, could not be tried; or where it was found impracticable to obtain a jury for his trial; or where the trial was not completed in consequence of the sickness of a juror; or there was a mis-trial for any cause; or where the delay proceeds from the fault or misfortune of the prisoner; but if the accused shall not be tried at the next term of the court, or the failure to try his cause shall not be occasioned by his fault or misfortune, or on his application, or with his assent, he shall be discharged on giving good and sufficient bail, provided that this section shall not be so construed as to prevent a prisoner committed for a capital offence being bailed at or before the first stated term of the court, if authorized by law."—Clay's Dig. 444, § 40.

The counsel for the prisoners insist, that the premature ad-

37

journment of the Circuit Court, which was not occasioned by any of the causes specified in the above recited act, entitles them to bail, as a matter of right, and this right the judge below denied them. The counsel for the State oppose to this, that if such be the effect of the statute, it violates the 17th section of the Bill of Rights in the Constitution of this State, which declares, "All persons shall, before conviction, be bailable by sufficient securities, except for capital offences where the proof is evident and the presumption great," &c..

It is believed that the history of the legislation of the State, both before and since the adoption of the constitution, and the numerous decisions of this court upon similar statutes, as well as the spirit of other portions of the constitution, very satisfactorily show that the above clause in the Bill of Rights was not designed to deny to the Legislature the power to pass laws providing for bail in capital cases, where the proof was evident or the presumption great. At the common law, all cases were bailable ; but it was competent for the Legislature, in the absence of a constitutional inhibition, to deprive the citizen of this right, or so to modify as to render it valueless. The clause was designed not to place a perpetual restriction upon the common law right of the citizens of the State, in the matter of bail, but on the contrary to secure by the fundamental law of the State, and to place this right, in the given cases, beyond the power of either legislative or judicial interposition ; creating, however, no restriction upon the Legislature as to the excepted cases, "where the proof is evident or the presumption great." It was not the intention of the framers of the constitution to keep a party incarcerated in prison before conviction, as a punishment for the offence with which he may be charged. Until conviction, the law presumes him innocent, and merely provides for his being forthcoming for trial and to suffer its penalty, should his guilt be ascertained according to its prescribed forms. If, without any fault attributable to the accused, the judge from term to term, in the exercise of his discretion over the matter of continuances, should delay the case by reason of some want of preparation on the part of the State, it would seem strange that the same instrument which declares he shall be entitled to a speedy public trial, should provide that however long his trial may be delayed, no law shall be passed allowing him to find sureties for his ap-

Ex parte Croom & May.

pearance, and thus to discharge him from oppressive imprisonment. The same provision in the Bill of Rights was enacted by the Territorial Legislature, on the 7th Feb. 1807, which declared that "all persons shall be bailable, unless for capital offences, where the proof shall be evident or the presumption great," &c. The same Legislature, on the 10th of the same month, made provision for bail in all cases of treason or felony, where the prisoner without his fault or misfortune was not tried; and both those features, under various modifications, have existed from that time until the present.—See the statutes, Aik. Dig. 121, § 40; Toulmin's Laws of Ala. 662, § 6; Aik. Dig. 348, § 26; Clay's Dig. 444, § 40; and for the decisions of this court predicated upon them, Phil v. The State, 1 Stew. 31; Simonton's Case, 9 Por. 390; Chaney's Case, 8 Ala. 424; Stiff's Case, 18 ib. 464. Here then is a legislative construction of this clause of the Bill of Rights which has obtained, as was well said in the argument, for near half a century, and which has been acquiesced in until now, and repeatedly acted on by this court. All this, as was very appropriately contended on the other hand, would not relieve the court from declaring the statute unconstitutional, if it amounted to a palpable or clear violation of any constitutional provision, yet it is a strong persuasive argument in favor of the law, and in a doubtful case should be considered conclusive. We should feel altogether unwarranted in holding this statute unconstitutional. It would seem somewhat paradoxical to hold, that in a *bill of rights*, the convention should have put the negative of a common law right beyond the power of legislative control, however much necessity might exist for legislative action.

Having ascertained that this statute is not unconstitutional, the next inquiry is, whether the facts and circumstances of the case before us entitle the prisoners to bail. In the solution of this inquiry, it will be proper to ascertain whether the prisoners were properly triable at the April Term of the Greene Circuit Court; for if they were not then "properly triable," the statute gives them no right to bail. What is meant by the "*first term of the court at which he is properly triable?*" Does it mean the term as prescribed by law, or the actual time the court may sit? The last construction has been urged upon us by the counsel opposed to the prisoners, and we have been referred by

them to the case, *Ex parte* Joseph Santee, 2 Va. Cases, 363. By an act of Virginia, if the prisoner was not tried at or before the *third term* after his examination before the justices, it was provided that he should be forever discharged of the crime, unless such failure proceeded from any continuance granted on the motion of the prisoner, or from the inability of the jury to agree on their verdict. In the case cited, three periods of time during which the court might have been holden had elapsed, and the question was, whether by the word term was meant the stated periods as prescribed by law, or merely the actual session of the court. Five of the judges of the general court held the latter, and the remaining four, namely, Parker, Semple, Allen and White were of opinion that the stated terms were meant. If that case can be regarded as of any weight as authority, it is upon statutes the collocation of which is different from our own. It is exceedingly clear, that by the "*first term*" is here meant the period of time limited and fixed by law during which the court was required to be holden, unless the business was sooner disposed of. Burrill's Law Dic., tit. "Term"—"Terms of Court—Terminus." Indeed, the statute could not be read with any other meaning attached to the word "term," without rendering it absurd; for it would then read that no person shall be entitled to bail, as a matter of right, when he is not tried at the first *session or sitting* of the court, *if the failure to try resulted from the entire failure to hold the court*, &c. But the meaning is manifest from other portions of the section; as, for example, the party is not entitled to bail, as a matter of right, if the failure to be tried results from the fact that *the term allowed by law* is so short that the case of the accused, according to the accustomed practice, could not be tried. Again, it says, if the accused shall not be tried at the next stated term of the court, &c. It is unnecessary to examine the other statutes, since by a proper construction of this, we think the right to bail is conferred, unless the prisoners are deprived of it for some of the causes specified.—Chaney, *Ex parte*, *supra*. This section clearly refers to cases which were capitally punished and in which the proof was evident or the presumption great, since the constitution gives, or rather secures the right in all other cases, and the Legislature could not interfere so as to take it away:

By the act of 1843, the Circuit Court for the county of Greene

Ex parte Croom & May.

shall commence on the second Mondays after the 4th Mondays in March and September in each year, and continue three weeks. Clay's Dig. 289, § 6.   These prisoners were indicted and arrested under a *capias* which commanded them to be brought before the April Term of the court, and the sheriff made his return that they had been arrested by him and were in his custody, under guard.   The court was opened for business on the 9th April; on the 12th the indictment was found, and a *capias* issued on the 14th, returnable to the court then sitting, and was executed by the parties' arrest, on Tuesday the 15th day of April; on Friday, the 18th, the court adjourned, no reason being given for the adjournment, either upon the record or by proof before the judge trying the writ. , The prisoners were placed in jail on the 20th. · Here then were seven judicial days of the term allowed by law unexpired when the Circuit Court adjourned, within which the party could have been tried, and within which it is fair to presume they would have been tried, had the court continued its session during the time prescribed by law.   Why the judge adjourned the court before the term expired, leaving unfinished business, does not appear upon the record.   It is argued, however, that we must intend sufficient cause existed, and that to allow parol proof that such cause did not exist, would be to disprove the record.   Were these positions correct, it would follow that in all cases where the record failed to show the cause of adjournment, the prisoner would be concluded, notwithstanding there was a premature adjournment.   We are of opinion, that if the prisoner shows that he was in custody before the adjournment, and actually in the jail in time to be tried, and would have been tried but for a premature adjournment, and the record shows no sufficient couse why the court should have adjourned, there being unfinished business, and the ability of the judge to try it being shown, the prisoner then has made out a *prima facie* case for relief.   He is not required to go farther and prove a negative, that there was not sufficient cause for the adjournment, but having exculpated himself and put the court in error, it is incumbent on those opposing his discharge to prove the affirmative fact, that the court was justified in adjourning.   We know of no rule of law which would justify us in going beyond the record to intend the existence of a state of facts which would deprive the party of a trial, and at the same time deny to him

his liberty upon bail. If the prisoners were required to negative by proof every cause which may be conceived of, and which may be sufficient to justify a premature adjournment, it would amount, in many cases, to a denial of the right. It is difficult to conceive where such investigation would end. We think the proof in this case, which shows the unfinished business, the general order of continuance of "all causes on the civil and criminal docket not otherwise disposed of," entered seven days before the time fixed by law as the terminus of the session, that the judge was not sick, and that no cause was assigned by him why the court was adjourned, does not in any way gainsay or controvert any fact stated in the record, and that the statute contemplates the admission of such proof. Whether the prisoners would be allowed to disprove a cause affirmatively set forth in the record, if it be shown that they had no opportunity of controverting it when made, is a question which it is not necessary now to decide. In this case, the facts shown justify the legal inference that the court prematurely adjourned without sufficient cause, such as the statute contemplates shall deny to the prisoners the right of bail.

The law makes it the duty of the judge not to absent himself from the court before the end of the prescribed term, unless the business shall be sooner disposed of—(Clay's Dig. 517, § 9)—and the general order of continuance which was made, is not such a disposition of the cases as the statute contemplates. Such continuance would follow as the result of a premature adjournment, whether the order was made or omitted. The adjournment was made, and the general continuance of all unfinished business, both civil and criminal, was ordered, in the absence of the prisoners, who were in the officer's custody, and they ought not to be prejudiced by the failure of the judge to continue the court until the business was disposed of, or until the end of the stated term, should the business require it.

But when the court adjourned the prisoners were at Greensboro', some miles distant from the court-house, and the sheriff was advised that it was unsafe to remove them. This would most unquestionably have justified the court in adjourning upon disposing of the other business, without waiting to see whether they would sufficiently recover from their wounds to be brought up for arraignment and trial; and in justice to the presiding judge, it would be proper

to remark, that we have no doubt but that in adjourning the court without disposing of their case, he was influenced by the belief that they could not be tried at that term, with safety to themselves, for we should be sorry to be understood as imputing to him any wilful disregard of duty. Nevertheless, the prisoners have the legal right to say to the court, "we were arrested and held in custody by your order, and the indictment, to answer to which we were held in custody by your officer, stood upon your docket for trial. Had the business been progressed with according to law and the practice of the court, we should have been ready on Monday of the third week, if not when arrested, to have responded to the charge. It would then have been your duty to set apart a day for our trial, (Clay's Dig. 296, § 37,) as it was likewise your duty "to deliver the jail of all persons committed for murders," &c., and as the constitution entitled us to a speedy public trial, which without our consent has been denied us, we claim the right consequent upon that denial, of being discharged on bail." It is no answer to say to them that they prayed no trial. Their response is, that they were prisoners and unable to move but by the court's order; neither have we any statute making their right to bail depend upon their being active in obtaining a trial, or applying for bail during the sitting of the court. In this our statute differs from 31 Car. 2. But the case is put, by way of illustrating the supposed unsoundness of the position that the prisoner may have bail without presenting himself to the court during its session and demanding a trial: "Suppose a prisoner at large absconds until after the court adjourns, but before the term as prescribed by law expires, can he come in and claim bail?" This is not the case before us, but the principle which we here assert would not extend to such case; for the court in the case supposed would not, at the time of the adjournment, have the custody of the party indicted, and the law would impose no duty upon the court in respect to him, but to issue process for his arrest and forthcoming at the succeeding term; and the same may be said of a person who is indicted but not arrested until after the court adjourns. His was not, at the time of the adjournment, a portion of the unfinished business which stood calendared for trial at that term. Not so, in the case before us, for here the parties were in custody on the 15th, and the court adjourned on the 18th of April.

Ex parte Croom & May.

But it may be said, the court must be presumed to know that when the adjournment was made, the parties could not have been tried by reason of their wounds, and had the right to continue their cause for that reason, otherwise it must remain in session during the whole stated term; or if it be the last court holden on the circuit which is not limited as to duration, the judge must keep the court open until the succeeding term shall arrive. This does not follow; on the contrary, if the court has *disposed of the business* as contemplated by the statute, and according to the practice the cause comes up as the remaining business, the court puts the party upon a continuance or trial, and if unable to get into court, this furnishes sufficient reason for a continuance in his absence. It is the prisoner's misfortune that his condition from sickness or wounds may prevent his trial. Although the party may be unable to get into court on the 18th, he will be able on the 20th, and the business of the court required by law to be transacted will require its session beyond that period. So that the prisoners show their case was properly triable at the April term, and that a trial was denied by a premature adjournment of the court, which the unfinished business did not authorize, nor the condition of the presiding judge require. They have a right to insist that the practice of the court, as regulated by law, and which would have *prima facie* secured them a trial, should have been observed.

Upon the facts we have stated, as shown by the petition and accompanying papers, we have arrived at the conclusion that the petitioners were entitled to bail, and that the writ of *habeas corpus* and *certiorari* to bring up to this court the prisoners, as also the proceedings had before Judge Smith, issue, unless the counsel engaged are satisfied no new phase would be presented by the return, and are content to apply to the judge below for the relief which they seek, as hereby indicated.

We regret that in a case involving such important points of practice, as well as the construction of constitutional provisions, we have been deprived of the aid of the Chief Justice, by reason of his severe illness. The necessity, however, for an immediate opinion, forbade our delay.

JULY 22.—We have not entered into the discussion of the construction of the act of 1827, (Aik. Dig. 348, § 36,) so ably insisted on by the counsel opposed to the prisoners, for the rea-

son that we regard that construction as settled by our predecessors, against the view of the learned counsel, in the parallel case of Simonton, 9 Por. 383-90, in which the parties were indicted and arrested upon writs of *capias* returnable to the same term of the court at which the indictment was found, and for the failure to try at which term, the prisoner was admitted to bail; and this case was re-affirmed, in *Ex parte* Chaney.

Since the foregoing opinion was prepared, the Chief Justice has so far recovered as to be able to examine it, and he requests me to state that he fully concurs in it.

Upon further consultation by the whole court, it is deemed proper to observe, lest what we have said about the general order of continuance of the business in the Circuit Court of Greene might mislead the judge upon a future application for bail, that if it should appear upon subsequent investigation that such general order was made at the suggestion or by the consent of the parties, whose cases were continued, or their counsel, the order would then operate as a continuance entered in each case by consent, and would be a completion of the business of the court, justifying its adjournment. This, although clearly inferrable from what we have previously said, may prevent any misconception of our view, as to what constitutes a premature adjournment.