## COLVIN ET AL. *vs.* OWENS.

1. When a writ of error is sued out in the name of one of the defendants " *et al.*," the abbreviation cannot, strictly considered, be construed to mean the other defendants in the cause below; but under the statute allowing amendments of writs of error, (Clay's Digest 312 § 39) the writ will be considered amended, so as to conform to the actual facts.

2. When a bill is filed to charge an undivided estate with the payment of a debt, the husband of a distributee is a necessary party to the suit; but if he dies after final decree, and before a writ of error is sued out, his representatives are not necessary parties to the writ, as the interest which he represented survives to his wife.

3. And if the husband, in such case, adopts the answer of the executrix, his mother-in law, and acts as her agent and assistant in the management of the suit, this does not render it necessary to make his representatives parties to the writ of error, as no decree could be rendered against them for costs incurred by him.

4. A surety who pays the debt of his principal, is subrogated to all the creditor's rights, so far as regards the securities and equitable remedies held by him for the payment of the debt; but he stands in no better position than the creditor himself occupied.

5. When an executor purchases stock for a plantation on his own account, which he considers and employs as his own property while in his possession, and it does not appear that his vendor dealt with him as executor, or relied upon the estate for payment, the latter has no equity against the estate for the payment of the purchase money.

6. And in such case, when the executor is removed from his office, if the acting executrix retains the stock on the plantation as his property, because he is largely indebted to the estate, this does not create a liability against the estate for the purchase money.

7. An executor cannot, by any assumpsit of his, render the estate liable for a debt which it does not really owe.

ERROR to the Chancery Court of Lowndes.

Heard before the HON. J. W. LESESNE.

This bill was filed by the defendant in error, alleging, that, in 1835, one Alexander Colvin departed this life, leaving a last will and testament, of which his wife and widow, Mary J. Colvin, and Timothy S. Colvin, his brother, were the executor and executrix; that they both qualified and acted as executor and executrix for several years; that the heirs and legatees of the said Alexander were, the widow and executrix as above stated, and his three children, viz: Flora, of lawful

age, and intermarried with James F. Key, James Colvin, of lawful age, and Henry, a minor over the age of fourteen years; that the said testator left a large estate, consisting of negroes, &c., and that the same has been kept together and undivided, and was so directed to be by the testator, until the youngest child should arrive at the age of twenty-one years, which time has not yet elapsed.

The bill further charges, that in carrying on the planting operations by the executors, it was indispensable to purchase stock, such as horses and mules, and that in November, 1838, while the said Timothy S. Colvin was still acting as executor of said estate with the said Mary J. as executrix, he, the said Timothy S., purchased several mules for the use and benefit of said estate, of and from one Eli Smith, and gave said Smith his promissory note therefor, amounting to the sum of two hundred and seventy-five dollars, and made due and payable on or before the first day of January, 1840, on which said note one Robert B. Colvin, the brother of the said Timothy S., and the complainant, were the securities.

The bill charges, that the mules were necessary to carry on the farm or plantation according to the directions of the testator, and were kept employed about the plantation and business of the estate, under the direction of the said Timothy S., executor, and of the said Mary J., executrix, as aforesaid; and that they are still upon the said plantation and in the employment of said estate; that at the maturity of the note above mentioned, the said Timothy S. and Robert B. Colvin were both insolvent, and unable to pay the note, and that the payment of the same was coerced from the complainant by law, in 1841, by the said Eli Smith; that after the payment of the note, as aforesaid, he called on the said Timothy S. and Mary J., executor and executrix, for reimbursement, but they refused to pay the money, or recognize the debt as one due and owing by the estate; but they made and executed to the complainant two notes for one hundred and sixty dollars each, one to fall due 1st January, 1843, and one 1st January, 1844, with interest from date. These notes were signed by the said Timothy S. and Mary J. Colvin, and were for the amount of money and costs paid by said complainant on account of the note which he had paid

to the said Smith, as security for the said Timothy S. Colvin.

The bill further charges, that complainant was unable to collect the amount of said notes, and caused the same to be sued; that judgments were regularly obtained on the same, and executions returned "no property found," both against Timothy S. and the said Mary J. Colvin; that on the 4th day of March, 1846, (the said Timothy S. having before that day either resigned, or been removed as executor of said estate,) at the instance and request of said Mary J., the sole executrix, the complainant agreed to give to said estate further day of payment, and then took from said Mary J. two other promissory notes for his debt, one for the sum of $292 $\frac{68}{100}$ due 1st January, 1847, and the other for $146 $\frac{43}{100}$, and falling due 1st January, 1848; which said notes are payable to complainant "on behalf of the estate of Alexander Colvin, deceased." The bill charges, that suit was brought on the larger note against the said Mary J., judgment obtained, and execution returned "no property," and the other note remains in complainant's hands utterly worthless; that said debt was incurred for and on account of stock for said estate; that said estate has received the benefit of said purchase; that it is solvent and out of debt, and yet remains undivided. The bill prays that said estate be made chargeable with said debt, and for general relief.

The answer of Mary J. Colvin, the executrix, admits most of the allegations of the bill, except that portion charging that the mules were bought for and on account of said estate. This her answer denies. She states, that, although she was nominally executrix from the first, yet while Timothy S. Colvin was executor of the estate, the entire management and control of affairs was in his hands, and she has only been the active manager of the affairs of said estate since the removal of the said Timothy S.; that soon after the death of the said Alexander Colvin, he removed the negroes belonging to said estate to his own plantation, and worked them with his own; that soon afterwards, the said Timothy S. brought on said plantation two mules, which he said he had purchased, but how he had purchased them defendant did not know; she had nothing to do with the purchase herself, and alleges that they were not purchased for the estate, but for the said

Timothy S. himself individually; that while said mules were in the possession of said Timothy S., he used them in the gin, and charged the estate toll for ginning; that said mules were also employed in hauling, and the proceeds of their labor always appropriated to the individual benefit of the said Timothy S.; besides, at the time the said mules were purchased, the estate had as many horses as it required, and the mules, if bought for the estate, would have been entirely unnecessary. She further says, no one ever thought of bringing a charge against the estate for said mules, until it was made manifest that the said Timothy S. and Robert B. Colvin were found to be insolvent; that when said Timothy S. was removed from the executorship of said estate, he left the said plantation and the two mules thereon, and defendant was about to send him his mules, when she was advised that, as the said Timothy S. was largely indebted to the estate, she ought to retain the mules and credit the balance against him with their value; and she adopted the advice, and thus retained the mules. The said Timothy S. is largely indebted to the defendant, but no settlement has yet been had between them, and there has been no particular credit yet given for the mules; but they were retained with a view of diminishing the balance of the large debt due from the said Timothy S. to the defendant, greatly exceeding the value of the mules.

She states, that, after the complainant first called upon the said Timothy S. for payment, he, the said Timothy S. offered him the two mules in payment of his debt, but the complainant refused to take them; the said Timothy S. then asked this defendant to become his security to the complainant, on notes given for the complainant's debt; and on the said Timothy S. giving the defendant, as she then thought, indemnity, she agreed to become, and did become his security to complainant; that the indemnity proposed to be given to this defendant was, that the said Timothy S. was to make her titles to the land which the said negroes were then cultivating; and the said defendant became the security of the said Timothy S., not because the estate was liable for the said debt, or because she was executrix of said estate, but because she wanted the land proposed to be conveyed to her as security; the land, however, proved to be valueless, as it was under a prior

mortgage. Defendant acknowledges that she executed the last notes exhibited by complainant, as "on behalf of the estate," but she was deceived as to the facts; she states, that complainant told her that said Timothy S. would swear that said mules were bought by him on account of said estate; and under the belief that, if the said Timothy S. would swear that, the estate in that case would be made liable for the debt, defendant executed the last notes in question. She also states, that when Timothy S. Colvin was removed from the executorship, a balance was found against him, in favor of said estate, of $11,286 $\frac{78}{100}$, on which executions were issued and returned "no property found."

The answer also contains a demurrer for want of equity. All the other defendants adopt the answer of Mrs. M. J. Colvin.

The testimony of James M. Ramsay and James Porter is taken, apparently with a view of establishing the fact that, when the notes were signed, one or the other set of them, Mary J. Colvin admitted that the mules were bought by Timothy S. for and on account of said estate; but their evidence does not establish that fact.

The complainant also examines James F. Key, who was the son-in-law of Mary J. Colvin, and one of the defendants in the cause, who swears that, at the time the last notes were executed, complainant, with one James Porter, then deputy sheriff of Lowndes county, came to the house of Mary J. Colvin; that the said Porter then had the execution against Mrs. Colvin and T. S. Colvin, issued on the judgments obtained on the notes given complainant by T. S. Colvin, with Mary J. Colvin, his security; that the said complainant insisted on making a levy on property; that complainant proposed to defendant, Mary J. Colvin, that if she would give the notes as executrix, he would extend the time of payment, which defendant refused to do, until complainant informed her that T. S. Colvin would swear that the consideration of the judgment upon which the execution issued was two mules for the estate of Alexander Colvin, deceased; witness then advised her to give her notes, and she then very reluctantly consented, and executed the notes last exhibited by complainant. He further states, that, at the time said notes were executed,

Mrs. Colvin insisted and averred that the mules referred to were not purchased for the benefit or on account of the estate; to which complainant replied, that he did not know that T. S. Colvin had any connection with the estate of Alexander Colvin at the time the complainant became his security to Eli Smith, but that T. S. Colvin had since told him that he would swear that they were bought for the estate; Mrs. Colvin still refused to give her notes, until witness advised her, that, if the statement of complainant was correct, witness, as an heir to the estate, was willing complainant should be paid; Mrs. Colvin then consented, and gave her notes as above set forth; witness informed her, that, if the statement of the complainant was correct, the testimony of T. S. Colvin would bind the estate, and she had better execute the notes, and get the time offered, which she consented to do. On cross examination he states, that he has often heard complainant say, that, at the time the mules were purchased, he did not know of the connection of Timothy S. Colvin with the estate, and when he signed the notes as security for said Timothy S. he had no fears, as he considered both Timothy S. and Robert B. Colvin good.

The complainant also examines Timothy S. Colvin, who swears, among other things, that, in the purchase of said mules, he was acting both for himself and for said estate, and they were bought for his own account and for account of said estate; he at the time was working on his plantation some three hands of his own, and about seven of the estate; the mules were taken to his plantation after their purchase, and employed by him on his own account, and also on account of said estate; he worked said mules on said plantation some six years; thinks it was necessary to purchase said mules at the time, in order to carry on the farm; the contract for said mules was made on Sunday, and the notes signed on Sunday; offered the complainant the mules in payment of his debt, but complainant refused to take them, preferrring to give time and take Mrs. Colvin as security with witness for the debt; that he induced Mrs. Colvin to become his security for said debt, but does not recollect of promising to convey to her the land cultivated by the negroes of the estate with his own; had given complainant a horse, in part payment of his debt, worth

one hundred dollars; recollects complainant told him that he did not know, at the time he became his security on said notes for the purchase of said mules, that he had any connection with the estate of Alexander Colvin; that he did not get credit in his final settlement with the estate for $250 paid for the mules, as he withdrew the account, inasmuch as he had not paid it; at the time witness acted as executor, the estate had no land, and witness put the negroes of the estate on his own land, with his own negroes; left the mules on the place when he was removed from the executorship, and left Mrs. M. J. Colvin in possession of said place; witness has not sought to charge the estate with the price of said mules, although he considered that the estate ought to pay seven-tenths of the purchase money, as the estate owned seven hands, and he only three; when witness left the mules in the possession of Mrs. Colvin, he was largely indebted to the estate, and was unable to pay.

On the bill, answers and proofs, the Chancellor decreed, that the complainant had a lien on the property of said estate for the payment of his debt, and decreed accordingly. To revise this decree, a writ of error is prosecuted to this court.

A motion is also made to dismiss the writ of error, predicated upon an affidavit on file, that James F. Key, one of the defendants in the cause, departed this life before the suing out of the present writ of error, and therefore it is insisted that it must be dismissed.

The errors assigned are:

1. That the court below erred in not dismissing the complainant's bill for want of equity;

2. That the court erred in not sustaining the demurrers to the bill;

3. In decreeing that the defendant, Mary J. Colvin, executrix, should pay complainant's debt out of the funds of the estate.

J. P. SAFFOLD, for plaintiffs in error:

1. Owens has no claim against the estate on account of his being the security of Timothy S. Colvin, on the note to Smith for the purchase money of the mules; because that

note was merged in the judgment, which Owens paid, and the new note afterwards accepted by him changed the nature of the debt. Smith never had any claim on the estate of Alexander Colvin, deceased, even if all the parties to the note had been insolvent; and the fact that Mrs. Colvin executed a new note, under a circumstances disclosed by the record, did not give Owens any claim upon the estate. On this last note Mrs. Colvin was alone responsible, and there was no lien whatever against the estate. Brown v. Lang, 4 Ala. 54; Jones v. Dawson, 19 ib. 572; Foster v. Athenæum, 3 ib. 55; 1 Turn. & Russ. 224, (11 Eng. Ch. R. 128;) Saunders v. McLaughlin, 14 Ala. 198; 6 Mass. 158; 8 ib. 199; 8 Vesey 4; 2 Hill's Ch. R. 234. The case of Brown v. Lang, above cited, is decisive of this. The estate of Alex. Colvin never was the debtor of Owens, nor of Eli Smith; and the words, "in behalf of the estate of Alexander Colvin, deceased," which were inserted in Mrs. Colvin's note, amount to nothing at all. The most that Owens could have done, in any aspect of the case, was, to coerce a settlement of the estate of Alex. Colvin, and, after division and distribution, to obtain a decree for the appropriation of Mrs. Colvin's interest to the payment of his debt; but, as the evidence shows that she was indebted to the estate, such a decree would be fruitless.

2. Mrs. Colvin was sued on only one of her notes to Owens; the other still remains. There can be no resort to equity, so far as this last note is concerned, until there has been a judgment at law, and execution returned "no property found." 14 Ala. 198.

3. It is not denied, that a surety who has paid the debt of his principal, is entitled to be substituted to the place of the creditor, as to all securities held by the latter for the payment of the debt. But Owens cannot claim any benefit from that principle; for the creditor himself had no claim against the estate, and of course Owens has none through him.

WATTS, JUDGE & JACKSON, contra:

If the writ of error is sued out in the name of Mary J. Colvin alone, then it must be dismissed under the authority of Cullum et al. v. Batre, Executrix, &c., 1 Ala. 126.

If, to avoid the effect of this motion, the writ be amended at the instance of counsel for plaintiffs in error, under the statute, (Clay's Digest 312, § 39,) then the motion is made to dismiss, because James F. Key, one of the defendants below, and one of the plaintiffs in error, was dead at the time the writ was sued out.

James F. Key having become interested in the estate of Alexander Colvin, deceased, by marriage only, the cause might proceed without his representative being made a party, were it not that he engaged actively in the defence of the suit, and thereby incurred a liability for costs. Heirs of Holman v. Bank of Norfolk, 12 Ala. 405, 406. Having incurred this liability for costs, his representative must be a party, in order to meet it, if it be taxed against him, as it must be, if the case be decided adversely to the plaintiffs in error.

The legal representative of James F. Key, deceased, cannot be made a party in this court, he having died before the writ was sued out; otherwise, if he had died after the writ was sued out. The writ should have been sued out in the name of the legal representative of James F. Key, and also in the names of the surviving defendants below. Headon v. Turner, Adm'r, 6 Ala. 66. If, however, the legal representative of James F. Key is not a necessary party, the writ should have been sued out in the name of the survivors, and the death of James F. Key should have been suggested in the writ. This was not done. Perrine et al. v. Babcock, 6 Porter 391.

The writ cannot be amended under the act of 1843, (Clay's Dig. 312, § 39,) by making the representative of Key a party, or by suggesting his death; the act does not reach such a case as this. See Armstrong, use, &c., v. Adams, 6 Ala. 751, 752. The writ must, therefore, be dismissed.

If the motion to dismiss the writ of error be overruled, then defendant in error submits the following points and authorities on the merits:

1. A surety who pays a debt is entitled to stand in the place of the creditor, as to all securities, funds, liens and equities, which he may have against other persons or property on account of the debt. Brown v. Lang et al., and authorities there cited, 4 Ala. 53, 54. See, also, Story's Equity § 499.

Colvin et al. v. Owens.

And it is hardly possible to put this right of substitution too high; and the right results more from equity than from contract or *quasi* contract. Hodgson v. Show, 3 Mylne & Keen, 190, 191, 192. Owen, then, is substituted to all the equities of Smith, the original creditor.

2. But if Smith had no equity to render the estate of Alexander Colvin, deceased, liable for the purchase money of the mules mentioned in the pleadings; or if he had, and B. C. Owens could not be substituted to it; still the facts subsequently occurring, as shown by the record, would give Owens an original and clear equity to render said estate liable for said mules, or the amount paid by him therefor. After the lapse of the year 1839, the mules were retained, and used by the estate exclusively; they were necessary for, and in fact became a part of the estate; and the executrix repeatedly promised to pay Owens the money he had paid for them.

3. The equity of a creditor to render a trust estate liable for his debt, is, that he has advanced his money, or given his credit, to effect the objects of the trust; and in charging trust estates with such debts, every estate must bear its own burthens; and to expend money for the benefit of a trust estate, means, either adding to its value, or defraying charges to which it would be liable; (Maywood v. Johnson, 1 Hill's Ch. Rep. 230;) and a trust estate is liable for necessaries furnished to the estate, though purchased by a general agent of the estate. Montgomery v. Eveleigh, 1 McCord's Ch. Rep. 267; Carter v. Eveleigh, 4 Dess. 19.

4. But the case of Jones v. Dawson et al., 19 Ala. 672, is cited by the counsel for plaintiffs in error, as militating against some of the principles above laid down, and as being decisive against defendant in error in this cause. Upon the facts of that case, the conclusion to which the court arrived was correct; the facts of this case are widely different from those of that. It is respectfully submitted, however, that some of the reasoning and positions assumed in the case of Jones v. Dawson et al., *supra*, cannot be sustained.

GIBBONS, J.—The first question presented for decision is the motion to dismiss the writ of error.

This motion is based on two grounds: first, that it is sued

out in the name of only one of the parties defendant; and secondly, that James F. Key died before the writ of error was sued out.

On looking at the writ of error itself, it is found to be in the name of "Mary J. Colvin et al." Perhaps, strictly considered, these abbreviations in a writ of error could not be construed to mean the other defendants in the court below; but on the authority of our statute, (Clay's Digest 312 § 39,) we are of opinion, that the present is a case following directly within the spirit of that act; and we would not hesitate to consider the writ of error as amended, so as to conform to the actual facts as to the parties in the court below.

But it is insisted, that, inasmuch as one of the defendants, James F. Key, died before the present writ of error was sued out, it is not competent to bring in his representatives on the present writ; and inasmuch as his representatives are necessary parties before the court, therefore this writ of error must be dismissed, and another sued out in the name of his representatives jointly with the other defendants.

To this it is replied, that, although the defendant Key was a necessary party while in life, having married the daughter of the said Alexander Colvin, deceased, yet now, inasmuch as he has died pending the suit, and the estate of said Colvin is not yet divided, his representatives are not necessary parties before the court, as his wife surviving him necessarily represents, in her own person, all the interests which he could possibly have represented while in life and before the court.

The defendant Key, while in life, was undoubtedly a necessary party to be brought before the court with his wife; but we cannot perceive what interest his representatives could possibly have in the litigation yet pending between the surviving defendants and the complainant. All the interest which he ever had in the subject matter of the litigation, was to represent his wife's interest before the court. The estate was not yet distributed; and consequently, the entire interest of the wife in said estate, not being reduced to possession by the husband during his life, would survive to her after his death.

But it is insisted, that the said Key engaged actively in the defence of the suit, and he therefore became liable for costs;

and being so liable, his representatives are liable in the same manner; and in support of this position, is cited the case of the Heirs of Holman v. The Bank of Norfolk, 12 Ala. 405, 406. In this case, Merrell, one of the defendants, disclaimed any interest in the suit, but still answered the bill fully, and denied its equity, and otherwise engaged actively in the defence of the case. The question before the court was, whether the said Merrell, under the circumstances, was competent to testify in favor of his co-defendants; and the court decided that he was not, as he, having no interest in the litigation, should have promptly and simply disclaimed, and then he would not have been liable for costs; but behaving as he had done before the court, he had creatad a liability for costs, by his own misconduct, and therefore was not a competent witness.

We do not consider the question now presented as falling within the spirit of the rule laid down in the case cited. The question there was not whether Merrell was or was not a necessary party before the court, but whether his peculiar conduct before the court, he not being a necessary party, had rendered him liable for costs, and therefore incompetent to testify. Admitting, however, the analogy of the questions, and the binding force of the case cited as a precedent, still it remains to be seen whether the defendant Key has, by his peculiar conduct in the present suit, misbehaved, and thereby created a liability for costs. He was a necessary party, and therefore properly brought before the court. He had the right, and was called upon by the complainant, to answer the bill. This he does by adopting the answer of Mrs. Colvin. He acts as the agent and assistant of Mrs. Colvin, his mother-in-law, in the management of said suit, because, as he states, she has no one else to aid her. In all this, we see nothing improper; nor do we see any reason for making his representatives parties to these proceedings, as in no event, in our opinion, could a judgment be rendered against them for costs which accrued during the lifetime of their intestate. The motion therefore to dismiss the writer of error is overruled.

Waiving the question as to whether the bill in the present case contains any equity on its face, which we consider, under the decisions of this court in the cases of Brown v.

51

Lang et al., 4 Ala. 54, and Jones v. Dawson, 19 Ala. 572, exceedingly doubtful, we pass directly to the consideration of the case as made by the bill, answers and proofs. We have no difficulty whatever in arriving at the conclusion, that the complainant has established no case for equitable relief.

It is undoubtedly true, that a security who pays the debt of his principal, is subrogated to all the rights of the creditor, so far as regards the securities and equitable remedies held by him for the payment of his debt. Story's Equity § 499. But whilst this is true, it is equally true, that where the security has thus paid the debt of his principal, he cannot stand in a better or higher position than the creditor. The question then recurs, in the present case : Had Eli Smith, under the case made by the proof, a lien, or a remedy in equity, against the estate of Alex. Colvin, for the payment of his debt ? We have no hesitation in saying that he would not; for independent of the authorities cited above from 4 Ala. and 19 Ala., there are many reasons entirely conclusive why he would not; and first, it does not appear, from the proof, that he dealt, in fact, with the representative of the estate, or reposed faith in it, and thereby parted with his property, relying upon the ability of the estate to make him whole. On the other hand, the case made is, that he dealt with Timothy S. Colvin in his individual character, and distrusting his solvency, called for security, which the said Timothy S. gave, viz: Robert B. Colvin, and the complainant Owen. It is no where shown, that said Smith ever knew of the relation which the said Timothy S. held to the estate of Alexander Colvin; on the contrary, the proof is conclusive to show that Owen, the complainant, and on that occasion the security of Colvin, was not himself aware of that relation. There was nothing, then, in the nature of the transaction between Eli Smith and the said Timothy S. Colvin. to distinguish it from the ordinary transactions of men dealing in their ordinary individual capacities.

Again; in the second place, it is denied by the answer that the mules were purchased for and on account of the estate, and it is charged that they were purchased individually by Timothy S. Colvin, for his own account, and controlled and managed by him as such until his removal from the executor-

ship of the estate, when they were left with Mary J. Colvin, and were retained by her as the property of said Timothy S., because he was largely indebted to her or to the estate. The answer, therefore, in this respect, denying the allegations of the bill, the case is made to rest upon the proof, as to what was the character of the transaction by T. S. Colvin in the purchase of the said mules; and our conclusion is, both from the testimony of Timothy S. Colvin, as well as from the other proofs in the cause, that the statements of the answer in this respect are true, and that it gives substantially a correct history of the character of the purchase. The most that the said Timothy S. Colvin can be made to say, on his examination, is, that the mules were bought jointly on his own account and on account of said estate; and the inference is irresistible from his testimony, that he states this because the estate had at the time, in his possession, seven hands, while he himself had only three; and therefore, he says, that the estate should pay seven-tenths of the purchase money, and he should pay three-tenths. But his whole testimony, taken together, shows that he purchased the mules individually, and on his own account, and so considered them while he remained in the possession and control of them. This then being the actual nature of the transaction between Eli Smith and Timothy S. Colvin, with what pretence, or show of equity, could the former have asserted a claim against the estate of Alexander Colvin for the payment of the purchase money of the mules? And if Smith could not have preferred a claim, how is it that the complainant can?

But it is insisted, that, although it should be considered that Smith had no equitable right to charge the estate of Alexander Colvin with the purchase money of said mules, still, the matters occurring subsequently between the complainant and defendants, coupled with the fact that the mules have all the while remained in the possession and employment of the estate, give to the complainant an original right to charge the estate with the amount of his debt. We think otherwise; for it is not competent for the executrix of an estate, by any assumpsit of hers, to render an estate liable for a debt which it really does not owe. It is true, her promise to pay a debt barred by the statute of limitations would

revive the debt, and make the estate liable; but in that case, the promise would be supported by a moral obligation, if not a valuable consideration, viz: the debt; but it is believed that is as far as the cases have gone. If it was competent for an executor or administrator of an estate to create debts so as to charge the trust funds, there would be but little security for the *cestuis que trust.* It is sufficient to say, that the law has denied to them any such power.

As to the fact that the mules have remained on the plantation, and in the possession of Mrs. Colvin, the executrix of the estate, we see nothing in it that should charge the estate with the complainant's debt; especially, when it is shown that the estate has paid full value for the mules to Timothy S. Colvin, as whose property they were originally retained by Mrs. Colvin, and to whom she holds herself liable to account for the value.

Our conclusion is, that, upon the case made by the proof, the complainant has failed to show himself entitled to any equitable relief; and the decision of the Chancellor is therefore reversed, and the complainant's bill here dismissed, with costs both of this court and the court below.