## GEORGE W. TYLER v. J. F. HOUGHTON.

JURISDICTION OF SUPREME COURT.— Under the Constitution as amended, the Supreme Court has original jurisdiction to issue writs of mandamus, certiorari, prohibition, and habeas corpus.

INTEREST OF TRUSTEE IN TRUST ESTATE.—A trustee of an express trust is a person having such beneficial interest in the trust estate, within the meaning of the four hundred and sixty-eighth section of the Practice Act, as to enable him to apply for a mandamus to compel the Surveyor-General to allow him to contest before him the application of a third person for the purchase of the land held in trust.

TRUSTEE—ACTION BY.—The trustee of an express trust may maintain an action to prevent waste or trespass upon the land held in trust, or to recover possession thereof, without joining with him his cestui que trust; and should he refuse to do so, his cestui que trust may compel him by action to do so.

STATE LANDS—CONTESTING PURCHASE OF.—It is the duty of the Surveyor-General to hear and determine all contests which may be brought before him by any person touching the right of the State to sell lands, or of the applicant to purchase the same, even though the contestant does not seek to purchase.

APPLICATION to the Supreme Court for writ of mandate.

In January, 1863, one Stayton was in the possession of a

tract of land in the County of San Joaquin, described as the northeast quarter of section twenty-seven, the west half of the northwest quarter of section twenty-six, the southwest quarter of the southeast quarter of section twenty-two, and the southwest quarter of the southwest quarter of section twenty-three, township four north, range five east, Mount Diablo meridian.

The land was inclosed by a substantial fence, and Stayton and his grantors had been in possession of the same for about eight years. At the time aforesaid, Stayton deeded the land to Geo. W. Tyler, in trust, to pay certain debts due from Stayton to one Ryer. Stayton continued to occupy the land until October, 1863, as the tenant at will of Tyler; when, without Tyler's consent, he surrendered possession of the same to Fisher & Co. Fisher & Co., soon after, induced Granger and two other persons in their employ to apply to the State Locating Agent to locate the land for them in lieu of the sixteenth and thirty-sixth sections. The Agent made the location in the name of Granger, and sent it to the Surveyor-General for his approval.

Tyler filed in the office of the Surveyor-General his protest against the approval of the location, and claimed to be allowed to contest before him the right of Granger to have the location approved.

Tyler did not claim to locate the lands himself, but merely claimed the privilege of contesting the right of the State to select these lands.

The Surveyor-General refused to allow the contest to be made.

*Tyler & Cobb*, for Applicant.

*J. G. McCullough*, Attorney-General, and *Budd & Carr*, for Respondent.

By the Court, SANDERSON, C. J.

This is an application for a mandamus to compel the

respondent, as Surveyor-General and Register of the State Land Office, to allow the petitioner to contest before him the application of one Granger for the purchase of certain lands in lieu of the sixteenth and thirty-sixth sections, under the Act of the 27th of April, 1863.

The first question presented for our determination is as to the jurisdiction of this Court in this class of cases. Under the new Constitution, it is claimed this Court has original jurisdiction in cases of mandamus, certiorari, and prohibition. Upon this point the language of the old Constitution was as follows: "And the said Court, and each of the Justices thereof, shall have power to issue writs of habeas corpus at the instance of any person held in actual custody. They shall also have power to issue all other writs and process necessary to the exercise of their appellate jurisdiction." The new Constitution reads as follows: " The Court shall also have power to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and also all writs necessary or proper to the complete exercise of its appellate jurisdiction." It is clear that under the old Constitution this Court had no original jurisdiction except in cases of habeas corpus. The only change made by the new Constitution is the addition of the writs of mandamus, certiorari, and prohibition. These writs could be issued in aid of the appellate jurisdiction of the Court previous to the amendments to the Constitution under the general power conferred to issue all writs and process necessary to the exercise of its appellate jurisdiction. Therefore, there could have been no occasion to enumerate these writs for the purpose of enlarging the appellate powers of the Court. Thus the change, in the language of the Constitution, is made purposeless, unless we hold that the intention was to add to the original jurisdiction of the Court. And we think, although it might have been more clearly expressed, that such intention is apparent from the language used. The clause in question must be read as giving express power to issue the writs of mandamus, certiorari, prohibition, and habeas corpus, and *in addition thereto*, all writs necessary or proper to the complete exercise of its appel-

late jurisdiction.   By this reading only can any design be accorded to the change which has been made.

The petitioner in this case holds the title or interest in the land in question, by virtue of which he claims the right to contest the application of Granger, as trustee of an express trust, and it is urged that he is not " the party beneficially interested," within the meaning of the four hundred and sixty-eighth section of the Practice Act, which prescribes by whom an application for a mandamus shall be made.   That section requires the application to be made by " the party beneficially interested."   It is the duty of a trustee to look after, guard, and protect the trust estate against all enemies; and it is not the policy of the law to place stumbling blocks in his path. On the contrary, it intends to afford every facility to that end. And especially is such the case under our system of practice. The sixth section of the Practice Act is in the following words: "An executor or administrator, or trustee of an express trust, or a person expressly authorized by statute, may sue, without joining with him the person or persons for whose benefit the action is prosecuted.  *   *   *   ."   That the trustee would be bound to bring an action to prevent waste or trespass upon the land in question, or ejectment to recover its possession in case of *ouster*, does not admit of doubt.   On the contrary, should he refuse to do so, his *cestui que trust* may bring an action to compel him to do so.   Such being the case, it is anomalous to say that he cannot apply for other relief, if necessary, in his own name.   The application for a mandamus is a proceeding in the nature of an action; and in our judgment the sixth section of the Practice Act as much applies to the case of a mandamus as to any other which may arise under that Act.   In our judgment, an executor or administrator, or trustee of an express trust, may invoke any remedy afforded by the law of the land, in their own names, without joining with them the person or persons for whose benefit they are acting, in all cases where such remedy is lawful and proper, and that they labor under no disability which would not attach to the parties for whom they act.   It follows that the petitioner in the present

case is a party beneficially interested within the meaning of the four hundred and sixty-eighth section.

The petitioner does not himself, nor on behalf of his *cestui que trust*, seek a purchase from the State of the land in question; and it is next urged, on behalf of the Surveyor-General and Register of the State Land Office, that he is not authorized to entertain a contest between parties who are not both applying for a purchase of the land. We do not so read the statute. There is certainly no such restriction expressly imposed by the terms of the Act, and such a restriction is repugnant to the whole scope and design of the Act. The object of the Act, as expressed in its title, is to provide for the sale of lands belonging to the State. In order to effect this object, it is of primary consequence to ascertain what land belongs to the State. When application is made for the purchase of any given parcel of land, it is of first importance, alike to the interest of the purchaser and the State, to ascertain whether such land is subject to selection and location by the State. If it is not, the State can neither pass the title, nor can the applicant acquire any by the proposed action. It would be folly, therefore, on the part of the State and the purchaser, to avoid any contest which might throw light upon the question of title. Clearly it is the policy of the Act in question to invite rather than discourage contests of this kind.

The State can gain nothing by selling land to which she has no title, and to decline a contest involving that title, from whatever quarter it may come, would be practising a species of fraud upon her own citizens, for by such a course it may not unfrequently happen that she will sell land which does not belong to her, and involve the purchaser in litigation more costly than the land itself, to which its loss may be superadded. In our judgment, it is made the duty of the Surveyor-General to hear and determine all contests which may be brought before him touching the right of the State to sell, or the applicant to purchase, in the manner prescribed in the twenty-seventh section of the Act.

Let a peremptory mandamus issue pursuant to the prayer of the petitioner.