[No. 3,625.]

# SIMON THOMPSON, W. G. MORRIS AND ROBERT SHEEHY *v.* ELIJAH TRUE.

TITLE OF STATE TO SIXTEENTH AND THIRTY-SIXTH SECTIONS. — An Act of Congress, passed after March 3, 1853, permitting the purchasers from the claimant of a rejected Mexican grant, to enter the land included within the boundaries of the grant; at one dollar and twenty-five cents per acre, does not divest the State of its title to the sixteenth and thirty-sixth sections within the grant; and a patent issued by the United States under said Act, to one of such purchasers, of a sixteenth or thirty-sixth section, does not convey the title.

ESTOPPEL BY JUDGMENT.—If the matters determined by a judgment against a defendant are set forth in the complaint, the question, as to whether the defendant is estopped by it, arises on the complaint.

REFERENCE OF LAND CONTEST TO DISTRICT COURT FOR TRIAL.—If an application is made to the Register of the State Land Office to purchase land, and a protest is filed on the ground that the State has no title, and that the title is in the protestant, and that he has the better right to purchase, and a contest arises before the State Register, which he refers to the District Court for trial, and an action is commenced in the District Court, it has jurisdiction to determine the question whether the State has title to the land.

ESTOPPEL BY JUDGMENT IN CASE OF CONTEST TO PURCHASE LAND. — If a
party makes an application to the Register of the State Land Office to
purchase a sixteenth or thirty-sixth section of public land, and one
who has obtained a patent to the land from the United States files a
protest, claiming that the title is not in the State, and that he has the
better right to purchase, and the contest is referred to the District
Court for trial, and the District Court adjudges that the title to the
land is not in the State, and that neither party has a right to purchase
the land from the State, and the applicant afterwards obtains a patent
from the State, the applicant is estopped by the judgment from aver-
ring that the patent from the State vested in him the title to the land,
and from denying that the patent issued by the United States trans-
ferred to the patentee the title to the land, and the patent issued by the
State is void.

PATENT TO LAND IN THE SUSCOL RANCH.—Although the Act of Congress
granting the right to purchasers from Vallejo, of land on the so-called
Suscol Ranch, to purchase from the United States, does not expressly
provide for a patent to issue to the purchaser; still a patent must issue,
as the usual mode of transmitting the legal title. The patent issued by
the United States to a purchaser of land which was a part of the so-
called Suscol Ranch, cannot be attacked by a private person on the
ground that the patentee had not the requisite possession to entitle him
to purchase under the Suscol Act, unless such person connects himself
with the title to the land.

APPEAL from the District Court, Seventh Judicial Dis-
trict, County of Napa.

The case was thus: M. G. Vallejo claimed that a large
tract of land had been granted to him by the Mexican gov-
ernment, before the acquisition of California by the United
States, and applied to the Board of Commissioners, ap-
pointed by the United States, to have the alleged grant
confirmed. It was called the Suscol Rancho. The case was
appealed to the Supreme Court of the United States, and,
in 1862, that tribunal decided that the grant was invalid.
A large number of persons had purchased from Vallejo
before the grant was rejected, and had enclosed and culti-
vated their respective parcels of land. Congress passed an
Act, approved March 3, 1863, extending the public sur-
veys over the Ranch at the expense of the settlers, and
permitting the bona fide purchasers from Vallejo to pur-
chase the land from the United States at one dollar
and twenty-five cents per acre, to the extent to which

the same had been reduced to possession at the time of the adjudication of the Supreme Court. This action was brought to quiet the title to the southwest quarter of section thirty-six, excepting therefrom a piece containing about fifty-nine acres. The land was within the boundaries of what had been called the Suscol Ranch. The plaintiffs had been in possession of the land since 1855. The land was surveyed in 1863, and the plat filed in November of that year. On the 20th day of May, 1867, the United States, under the Suscol Act, granted a patent to the land in dispute, along with other lands, to the plaintiffs Thompson and Sheehy, and the grantors of the plaintiff Morris. The patentees presented their claim under the Act of Congress, within twelve months after the approved plats of the survey were filed in the Land Office. On the 21st day of April, 1864, the defendant applied to L. Ransom, the State locating agent, to locate and purchase from the State said southwest quarter, the application was accepted and approved by the Surveyor-General of California on the 28th day of February, 1868, and the defendant demanded a certificate of purchase. The plaintiffs Thompson and Sheehy, and the grantors of plaintiff Morris, filed a protest, and the Register of the State Land Office referred the contest to the said District Court for trial. On the 6th day of April, 1870, the District Court rendered the judgment mentioned in the opinion. (See *Sheehy* v. *True*, 45 Cal. 236.) On the 10th day of December, 1870, the defendant applied to the Register of the State Land Office for a certificate of purchase, and the Register, notwithstanding the judgment of the District Court, gave him a certificate, and afterwards a State patent was issued to him.

Judgment in this case was rendered in favor of the plaintiffs September 12, 1872. The transcript does not show when the action was commenced, but it shows that it must have been commenced after the State patent was issued. The defendant appealed.

The other facts are stated in the opinion.

*Catilin & McFarland* and *George Cadwalader*, for the Ap-

pellant, argued that the land was not excluded from the grant of the sixteenth and thirty-sixth sections made by the Act of March 3, 1853, by the following reservation in the Act:

" That where any settlement, by the erection of a dwelling-house or the cultivation of any portion of the land, shall be made upon the sixteenth and thirty-sixth sections before the same shall be surveyed, or where such sections may be reserved for public uses, or taken by private claims, other lands shall be selected by the proper authorities of the State in lieu thereof." (10 U. S. Statutes, 246.)

That the words " private claim," in the reservation, applied only to a settlement made under the preëmption law of 1841. They also argued that the defendant, being in privity with the source of paramount title, because he claimed from the United States through its grant to the State, had a right to dispute the plaintiff's title and attack their patent; and that their patent was void because there was no law authorizing it to be issued as the Suscol Act did not provide for a patent; and cited *Patterson* v. *Winn*, 11 Wheat. 380. They also argued that the judgment of the District Court, in case of *Thompson* v. *True*, was not an estoppel, because in said action the defendant did not have the title which he now set up, to wit: The State patent; and because the plaintiffs failed to get the judgment they sought, to wit: The right to purchase from the State.

*Thomas P. Stoney* and *Hartson & Burnell*, for the Respondents, argued that the judgment in *Morris et al.* v. *True*, was an estoppel and decisive of the whole case, because it was decided by the District Court:

1st. That the State of California had no title to the southwest one quarter of section thirty-six.

2d. That the plaintiffs in this action had acquired the title from the United States under their Suscol Patent.

3d. That consequently the Register of the State Land Office should deny defendant's application for a certificate of purchase.

That the Court, having decided that the State had no

title to convey, it was a useless enquiry whether one party or the other had the right to a certificate of purchase from the State. As to the jurisdiction of the District Court to pass on the question of title, they made the following argument:

It is provided in section twenty-seven of the Act of April 27, 1863, (Statute 1863, p. 599,) that "in all cases where a contest shall arise for the approval of a survey or location before the Surveyor-General, or for a certificate of purchase or other evidence of title before the Register, that officer shall, when such contest is a question as to the survey, or purely a question of fact, determine the same according to the facts, and give his approval or issue the certificate of purchase, or other evidence of title, as he may so determine."

The jurisdiction of the Court will depend upon the issue in the Land Office. If the want of title in the State was a legitimate ground of controversy in the Land Office, and its assertion created a contest such as the Act of the Legislature contemplated, then, undoubtedly, the Court had jurisdiction to decide that issue. Did the assertion of title in themselves, and denial of title in the State by the respondents, create a contest upon the application of appellant for a certificate of purchase?

In *Tyler* v. *Houghton,* (25 Cal. 30,) a mandamus was issued by this Court requiring the Surveyor-General to permit the petitioner to contest an application to purchase lieu lands under the Act of 1863. The petitioner did not claim the right to locate the land himself, but merely the privilege of contesting the right of the State to select the land. The Surveyor-General declined to allow the petitioner to contest on the ground that he was "not authorized to entertain a contest between parties who are not both applying for a purchase of the land."

The Court say: "We do not so read the statute. There is certainly no such restriction expressly imposed by the terms of the Act, and such a restriction is repugnant to the whole scope and design of the Act. The object of the Act, as expressed in its title, is to provide for the sale of lands

belonging to the State. In order to effect this, it is of primary consequence to ascertain what land belongs to the State. When application is made for the purchase of any given parcel of land, it is of first importance alike to the interest of the purchaser and the State, to ascertain whether such land is subject to selection and location by the State. If it is not, the State can neither pass the title, nor can the applicant acquire any by the proposed action. It would be folly, therefore, on the part of the State and the purchaser to avoid any contest which might throw light upon the question of title. Clearly it is the policy of the Act in question to invite, rather than discourage contests of this kind.        *        *        *        *        *        *

"In our judgment, it is made the duty of the Surveyor-General to hear and determine all contests which may be brought before him touching the right of the State to sell, or the applicant to purchase, in the manner prescribed in the twenty-seventh section of the Act."

In the case of *Higgins* v. *Houghton* (25 Cal. 259), the protest was on the ground that the land was mineral land, and did not belong to the State. The signers of the protest had no interest in the land nor improvements, and had "no relations to the land except as ' dwellers ' upon it at the point of time when the protest was signed," and the Court say : "Still we consider the protestants as competent parties under the Act of 1863, to contest the plaintiff's right to a patent."

If, then, the want of title in the State was a legitimate ground of contest, as that contest involved a question of law which the Register could not decide, and, moreover, as the plaintiffs demanded that it be referred to the Courts, we see no way of avoiding the conclusion that the order of reference conferred jurisdiction upon the Court to determine that contest by an adjudication upon the question of title, as well as all other matters involved in it. (Act of 1863, Sec. 27, Statutes 1863, pp. 599, 600.)

Otherwise the law would encourage a useless controversy, and not only invite, but entertain a contest which it had provided no tribunal to decide. It certainly would not be

maintained that the contest could be decided by the Court, but that the decision would not bind the State officers or parties.

This Court has, in the case of *Hinkley* v. *Fowler* (43 Cal. 56), had under consideration the jurisdiction of the Courts in the matter of contests, under the twenty-seventh section of the Act of 1863, and the conclusions of the Court are thus stated:

"Under the twenty-seventh section of the Act, when the contest is referred to the Courts for settlement, it is to be determined upon the principles of law and equity involved. The Court is to exercise its judicial authority in adjudicating the entire case as presented. It is not confined to the narrower measure of relief which the Surveyor-General, in the exercise of a mere *quasi* judicial function in determining mere matters of fact, might award. Such was not the intent of the statute. Its purpose was to provide for the settlement of the rights of the parties litigant at once and forever. The jurisdiction of the Court is as broad and effective as though one of the parties had already obtained a title to which the other had the better right. The Surveyor-General.is to•determine only those contests in which the survey, or purely a question of fact, is involved. But when a question of law only is involved, or one of law and fact, the parties are to be referred to the Courts for its determination, and in the Courts the ordinary rules of pleading and of evidence are to be observed, and judgment is to be rendered as in ordinary adversary proceedings."

By the Court, Rhodes, J.:

The land in controversy is a part of a thirty-sixth section, and by virtue of the Act of Congress of March 3, 1853, as we construed it in *Sherman* v. *Buick* (45 Cal. 656), the title vested in the State; and by means of the State patent, the title was transferred to the defendant, unless the operation and effect of the judgment in *Morris* v. *True*, which is set up in the complaint, precluded the defendant from relying on title derived from the State.

It is unnecessary to notice any of the preliminary objections of the plaintiff, to the effect that the answer raises no issue as to the judgment in *Morris* v. *True*; and that in the motion for a new trial there is no specification which calls in question the implied finding in favor of the plaintiff upon the issue in respect to the judgment, for the matters determined by that judgment are set forth in the complaint, and thereupon the question arises as to whether the defendant is thereby estopped to aver title in himself derived through his patent from the State.

It is averred that the defendant made application to purchase the lands from the State; that the plaintiffs in that case filed with the Register of the State Land Office their protest, etc., on the ground that the title was vested in them, and that the State had no title; and on the further ground that they had the prior right to purchase the lands from the State. After stating that a contest arose before the State Register; that it was referred to the District Court; that an action was instituted, in which the defendant appeared, etc., it is averred that a judgment was duly made and entered, whereby it was adjudged that the legal title to the premises was vested in the plaintiffs, under their patent from the United States; that the State had no title or interest therein, and that the defendant was not entitled to receive from the State Register a certificate of purchase. Upon looking into the judgment, it is found that in addition to the matters averred in the complaint, it is adjudged that neither party is entitled, under his application, to purchase the lands from the State; and that the defendant have judgment for his costs. After the entry of that judgment, the State Register issued to the defendant a certificate of purchase, and subsequently a patent was issued to him by the State.

The defendant contends that the Court had no jurisdiction to decide the question of title—that is to say, to determine whether the title had vested in the State—that the issue referred was necessarily confined to the question as to which of the applicants had the better right to make the purchase from the State. If this proposition be not sus-

tainable—if the Court had jurisdiction to determine that the title was not in the State—the conclusion is irresistible that the determination of that issue is binding upon the defendant, and that he is now estopped to aver that the title had in fact vested in the State. If the Court possessed such jurisdiction the judgment was binding upon the officers of the State Land Department, to the extent at least, that they had no authority to issue to either of the parties to that action a certificate of purchase or a patent. *Tyler* v. *Houyhton* (25 Cal. 26) was an application for a mandamus to compel the State Register to allow the petitioner to contest an application for the purchase, from the State, of certain lands as lieu-lands; and it was held that the petitioner was authorized to contest the application, although he was not an applicant to purchase the lands from the State. And it was held that "it is of primary consequence to ascertain what land belongs to the State. When application is made for the purchase of any given parcel of land, it is of the first importance, alike to the interest of the purchaser and the State, to ascertain whether such land is subject to selection and location by the State." That is to say, the issue as to whether the land was the land of the State, or was subject to selection and location by the State, was a material issue in the contest. That issue would, also, be a material issue in the action instituted in pursuance of the reference of the contest to the District Court. It is manifest, we think, that the Court would have no jurisdiction in a contest between two rival claimants for the purchase of the same land, unless the State had acquired the title, or, what amounts to the same thing, had taken such steps in the selection and location of the land, that the title would pass to the purchaser from the State. The issue of title in the State must, therefore, be a material issue, and no reason is perceived why its determination in a contest which the State Register referred to the District Court, should not be as binding and conclusive on the parties, as a similar determination in any other action between the same parties. It results from this construction of the effect of the judgment in *Morris* v. *True* that the defendant is estopped to

CAL. REPS. XLVIII—39

aver that the patent issued to him by the State, vested in him the title to the land in controversy; and by means of the same judgment he is estopped to deny that the patent issued by the United States to the plaintiff, transferred to them the title to the premises.

It is urged by the defendant that the plaintiff's patent is void, as issued without authority of law. We are of the opinion, as stated in *Durfee* v. *Plaisted* (38 Cal. 83), that "the patent, although not expressly provided for in the Act, (The Suscol Act,) issues in pursuance of the entry as the usual, and perhaps necessary mode, in the absence of any other provision for the transmission of the legal title to the purchaser." The proceedings under the Suscol Act had upon the plaintiff's application to purchase, and the patent issued to the plaintiff, if liable to attack by a private person on the grounds now urged by the defendant, that they did not have the requisite possession of any legal subdivision of the quarter section which includes the lands in controversy, and that they were not entitled to purchase under that Act, etc., cannot be attacked by the defendant, because he does not connect himself with the title to the lands in controversy.

Judgment and order affirmed.

Neither Mr. Chief Justice WALLACE nor Mr. Justice NILES expressed an opinion.