Points Decided.

[No. 6,905.]

# HYATT v. ALLEN.

CONSTITUTIONAL LAW — STATUTE — CONSTRUCTION — SUPREME COURT — JURIS-DICTION—MANDAMUS—CERTIORARI—PROHIBITION—HABEAS CORPUS.—Where a law, antecedent to a revision of the statutes, is settled either by clear expressions in the statutes, or adjudications upon them, the mere change in the phraseology shall not be deemed or construed a change of the law, unless such phraseology evidently purports an intention to work a change. *Held*, accordingly, that the provision in § 4 of art. 6 of the new Constitution, that this Court "shall have power to issue writs of *mandamus, certiorari, prohibition*, and *habeas corpus*, and all *other* writs necessary or proper to the complete exercise of the appellate jurisdiction"—used in the place of the corresponding provision in the old Constitution, viz., that "the Court shall have power to issue writs of *mandamus, certiorari, prohibition, habeas corpus*, and *also* all writs necessary or proper to the complete exercise of its appellate jurisdiction,"—does not indicate an intention to change the law; and that the Supreme Court has, under the new Constitution—as it had under the old—original jurisdiction to issue such writs.

THORNTON, J., dissenting: It was the intention of art. 6, § 4, of the Constitution to confer *appellate* and not *original* jurisdiction on the Supreme Court; and the juxtaposition of the clause, that "*the court shall also have power to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and all other writs necessary and proper to the complete exercise of its appellate jurisdiction*," indicates an intention to confer upon the court the power given for the purpose of aiding its *appellate* jurisdiction.

CONSTRUCTION—STATUTE.—It is the duty of the Court to construe every provision of a written instrument so as to give force and effect not only to every clause, but to every word in it, so that no clause or word may become redundant, unless such construction would be obviously repugnant to the intention of the framers of the instrument, to be collected from its terms, or would lead to some other inconvenience or absurdity.

MANDAMUS — PARTIES. — A taxpayer is "a party beneficially interested in having all the property in the district assessed, and is therefore a proper party to make the affidavit for the issuance of the writ of *mandamus* to the Assessor, to compel him to assess property subject to assessment.

ID.—*Mandamus* is the appropriate remedy in such cases.

CONSTITUTIONAL LAW. — Provisions of the State Constitution which do not require subsequent Legislation to enforce them, are self-executing. *Held*: accordingly, that § 1 of art. 13 of the Constitution, which provides that "all property in the State, not exempt under the laws of the United States, shall be taxed in proportion to its value, *to be ascertained as provided by law*," requires that assessors shall proceed to ascertain such value *in the manner* now provided by law.

APPLICATION for writ of *mandamus* to the Assessor of the City of Stockton.

The facts are stated in the opinion.

VOL. LIV.—23.

*J. H. Budd*, and *Stanton L. Carter*, for Plaintiff.

*J. C. Campbell*, and *Hillsbury & Titus*, for Defendant.

By SHARPSTEIN, J. :

An application has been made to this Court for a writ of *mandamus* to issue to the Assessor of the City of Stockton.

There is no cause pending in this Court on appeal, in which it is necessary or proper to issue the writ prayed for to that officer. The application is, therefore, in the nature of an original one to this Court; and for that reason it is insisted, on behalf of the respondent, that this Court has no power under the Constitution of this State to grant it. Consequently, it devolves upon this Court to determine that question. This we will proceed to do, before considering any other question involved in the case.

This Court derives its jurisdiction from § 4 of art. 6 of the Constitution. The jurisdiction which the Constitution confers upon the Court it is bound to exercise; and it is equally bound not to exercise any other. It is no less the plain and solemn duty of the Court to act in the one case, than it is to refrain from acting in the other. Neither usurpation nor dereliction in respect of jurisdiction can be safely tolerated in courts of justice. Both should be avoided in all cases.

The section of the Constitution to which we have referred prescribes first the appellate jurisdiction of this Court, with a precision that leaves nothing further to be desired in that respect. Following that is this clause : " The Court shall also have power to issue writs of *mandamus, certiorari*, prohibition and *habeas corpus*, and all other writs necessary or proper to the complete exercise of its appellate jurisdiction."

The history of this clause is as follows : In the first Constitution there was a provision which read : " And the said Court and each of the justices thereof shall have power to issue writs of *habeas corpus* at the instance of any person held in actual custody. They shall also have power to issue all other writs and process necessary to the exercise of their appellate jurisdic-

tion." That clause received an early construction in *The People* v. *Turner*, 1 Cal. 144, in which it was said, " that with the single exception of proceedings upon *habeas corpus*, this Court has no original jurisdiction, and that the Legislature can confer upon it none." This was afterward cited and approved in *White* v. *Lighthall*, 1 Cal. 347, and in *Cowell* v. *Buckelew*, 14 Id. 642.

The second Constitution contained the following clause : " The Court shall also have power to issue writs of *mandamus, certiorari*, prohibition, and *habeas corpus*, and also all writs necessary or proper to the complete exercise of its appellate jurisdiction." This, likewise, came early before the Court for construction, and in *Tyler* v. *Houghton*, 25 Cal. 26, the Court, (Sanderson, C. J., delivering the opinion) after comparing this with the clause above cited from the first Constitution, says : " It is clear that under the old Constitution this Court had no original jurisdiction except in cases of *habeas corpus*. The only change made by the new Constitution is the addition of the writs of *mandamus, certiorari*, and prohibition. These writs could be issued in aid of the appellate jurisdiction of the Court previous to the amendments to the Constitution, under the general powers conferred to issue all writs necessary to the exercise of its appellate jurisdiction. Therefore there could have been no occasion to enumerate these writs for the purpose of enlarging the appellate powers of the Court. And we think, although it might have been more clearly expressed, that such intention is apparent from the language used. The clause in question must be read as giving express power to issue the writs of *mandamus, certiorari*, prohibition, and *habeas corpus*, and, *in addition thereto*, all writs necessary or proper to the complete exercise of its appellate jurisdiction. By this reading only can any design be accorded to the change which has been made." This was accepted and acquiesced in as the true construction of the clause of the late Constitution relating to the power of this Court to issue the writs referred to, until that Constitution was superseded by the present one.

In view of the long acquiescence in that construction, it will be conceded on all sides that if the clause in the late Constitu-

tion relating to this subject had been literally copied into the present Constitution, it would have been conclusive evidence of the intentions of those who framed and of those who adopted the latter instrument, to confer the same power upon the present Court that the late Constitution, according to that decision, conferred upon the late Court. Of this there can be no doubt. There is, however, a difference at least in the phraseology employed in the clauses relating to this subject in the late and present Constitution. If it be a substantial difference, it must be held to indicate an intention to change the organic law on this subject.

If, on the other hand, there has been no substantial change effected in the meaning of the two clauses, the mere change in the phraseology will not be deemed to alter the law. The rule was laid down by Chief Justice Kent and Mr. Justice Spencer as follows: " Where a law, antecedently to a revision of the statute, is settled, either by clear expressions in the statutes or adjudications on them, the mere change of phraseology shall not be deemed or construed a change of the law, unless such phraseology evidently purports an intention to work a change." (*Taylor* v. *Delaney*, 2 *Caines' Cases in Error*, 150 ; *Yates' Case*, 4 Johns. 359.) This statement of the rule has been cited and approved by nearly all the eminent jurists of New York, and by many of the highest courts of other States. In *Duramos* v. *Harrison*, 26 Ala. 326, the Court says: " We must take it for granted that at the time the Code was adopted the Legislature knew the construction which had been placed on the former statutes above referred to, by the several decisions above cited. And if, with knowledge, the Legislature has re-enacted in the Code provisions which are *substantially* the same as those contained in the former statutes, such re-enactment is a legislative adop tion of the known construction of those provisions." As is well known, to the profession at least, the general rules of interpreta tion are the same whether applied to statutes or Constitutions. (Sedgwick on the Construction of Stat. and Const. Laws, 19.)

The difference between the clause in the late and the corre sponding one of the present Constitution, consists in the omission in the present Constitution of the word " also " which occurred

in the late, and of the introduction of the word "other" into the present, which did not occur in the corresponding sentence of the late Constitution.  In the late Constitution the sentence read : "And *also* all writs ;" in the present it reads, "and all *other* writs."   The omission of the word "also" is of little or no significance.   The expression, "and also" is tautological, although of frequent occurrence in legal instruments.   The introduction of the word "other" is not so easily accounted for. Its meaning is not the same as that of *also*, and yet its introduction does not necessarily indicate an intention to change the meaning of the clause into which it was introduced.   Before arriving at that conclusion, we must determine, if we can, what the word *other* does mean, in the connection in which it is used.   Webster's definition of it is, "different from that which has been specified."  Worcester's, "not the same; not this or these ; different."

We are bound by a familiar rule of construction not to treat any word as redundant, if we can avoid doing so without marring the obvious sense of the entire clause.   In order to express the full meaning and significance of that word in the connection in which it is used in the clause under consideration, that clause must be reconstructed as follows :  "The Court shall have power to issue writs of *mandamus, certiorari,* prohibition, and *habeas corpus,* and all writs *different from those which have been specified,* necessary or proper for the complete exercise of its appellate jurisdiction."

The objection to this construction is, that it deprives the Court of the power to issue, in the strict exercise of its appellate jurisdiction, any of the enumerated writs.   But the objection in our opinion is untenable.  If the power of the Court to issue the enumerated writs, when necessary for the complete exercise of its appellate jurisdiction, depended upon a direct and positive grant of that power in the Constitution, the force of the objection would be apparent.   In the absence, however, of any specific prohibition in the Constitution, the Court would undoubtedly have the power to issue all writs necessary to the complete exercise of its appellate jurisdiction.   And the clause under consideration, as we construe it, does not affect the power

of the Court in that respect. Its effect is to limit the power of the Court to issue the non-enumerated writs to cases in which it is necessary to the complete exercise of its appellate jurisdiction to issue them, and to enable the Court to issue the enumerated writs in all cases for which no other appropriate or adequate remedy has been provided.

Conceding, however, that the objection is well founded, it affords no warrant for our violating a rule of construction which requires that a limiting clause shall be restrained to the last preceding antecedent; and that a subsequent obscure clause shall not control a previous clear provision. (*Cushing* v. *Worrick*, 9 Gray, 382; *State* v. *Williams*, 9 Ind. 191.) But for the subsequent clause, which clearly relates to the appellate jurisdiction, the preceding clause would be free of ambiguity; and in order to import one into it we must disregard the maxim, "*Ad proximum antecedens fiat relatio nisi impediatur sententia.*"

The clear provision is, that the Court shall have power to issue the writs enumerated. The obscure one is, that it shall have power to issue "all other writs necessary or proper to the complete exercise ·of its appellate jurisdiction." The question is whether the Court, in the exercise of its appellate jurisdiction, may not issue any of the enumerated writs when it becomes necessary or proper so to do. But the question does not arise in this case, and it will not be necessary to consider it, until, in the exercise of its appellate jurisdiction, it becomes necessary or proper for the Court to issue one of the enumerated writs. It may be remarked, however, that the applications for these writs are generally in cases not pending in this Court on appeal, and that they are seldom issued in the strict exercise of its appellate jurisdiction. This, as a matter of practice, must have been known to the framers of the Constitution, and for that reason we have no right to presume that if it had been their intention to effect the radical change for which some contend, they would not have made it clearly manifest. If the intention had been to limit the power to issue any of these writs to cases strictly within the appellate jurisdiction of the Court, then, as we have already suggested, the entire provision is redundant; and it is our duty to so construe every provision of a written instrument

as to give force and effect, not only to every clause but to every word in it, so that no clause or word may become redundant, unless such construction would be obviously repugnant to the intention of the framers of the instrument, to be collected from its terms, or would lead to some other inconvenience or absurdity.

A comparison between the provisions of the present and those of the first Constitution adopted in 1849, on this subject, strengthens, we think, our position on this question. In the latter only one writ was specified, the writ of *habeas corpus;* and after conferring power upon the Court to issue that writ, the following clause occurs: " They shall also have power to issue all *other* writs and process necessary to the exercise of their appellate jurisdiction." In *The People* v. *Turner, supra,* the Court, in construing that clause, says : " It appears entirely clear, that with the single exception of proceedings upon writs of *habeas corpus,* this Court has no original jurisdiction."

If in that Constitution, as in the present, any other writs had been specifically enumerated in connection with the writ of *habeas corpus,* there is no reason for thinking that the Court would not have included them in the exception. In the latter clause of the provision of the Constitution of 1849, to which we have referred, the phrase " *other writs* and process necessary to the exercise of their appellate jurisdiction " occurs, and it has never been suggested, so far as we are advised, that that restricted the issuance of the writ of *habeas corpus* by the Court to cases within its appellate jurisdiction.

It is perhaps worthy of remark, that in no one of the three Constitutions of this State is the jurisdiction of this Court in any case termed " original." While it has never been doubted that this Court might under any of these Constitutions issue the writ of *habeas corpus* in cases outside of its appellate jurisdiction, the exercise of that power is not denominated as " original jurisdiction " in any one of the three. This convinces us that when providing for the issuance of the writs enumerated in the clauses which we have had under consideration, the framers of these Constitutions intended that they should be issued when necessary, without reference to the questions of original or appellate

jurisdiction. The non-enumerated writs could only be issued in the exercise of the appellate jurisdiction of the Court. The distinction between the writs enumerated and those not enumerated, exists in all three of the Constitutions, although in the first there is but one writ specifically mentioned.

The conclusion at which we have arrived upon the question of the jurisdiction of the Court to issue the writ, makes it necessary for us to examine and pass upon the other grounds specified in the demurrer to the petition. These are four in number, and are to the effect that the petition does not state facts sufficient to justify the issuance of the writ; and that the petitioner has not the legal capacity to sue out the writ; that the petition is ambiguous and uncertain, because it does not state the value of the property, which, it is alleged, the Assessor refuses to assess; and that it does not appear that any demand was made upon the Assessor to assess the property mentioned in the petition.

In a brief filed on the part of the respondent, there are no points or authorities stated or cited upon any question involved in the case, except as to the constitutional power of the Court to issue the writ, which we have already passed upon.

We think that the petitioner, who is a tax-payer within the district of which the respondent is Assessor, is " a party beneficially interested " in having all the taxable property in the district assessed, and is therefore a proper party to make the affidavit for the issuance of the writ in this case.

The objection that the petition does not state the *character* of the demand made upon the Assessor to perform his duty, does not, in the absence of any point or authority to support it, impress itself upon us as possessing any merit. We deem the allegation of a request and refusal sufficient.

That *mandamus* is the appropriate remedy in cases like this, is settled by *People* v. *Shearer*, 30 Cal. 645.

The rule that the provisions of State Constitutions which do not require subsequent legislation to enforce them are self-executing, was considered in *McDonald* v. *Patterson*, recently decided; and we think that § 1 of art. 13, which provides that " all property in the State, not exempt under the laws

of the United States, shall be taxed in proportion to its value, *to be ascertained as provided by law,*" requires that Assessors shall proceed to ascertain such value *in the manner* now provided by law. Or, in other words, that the law in force at the time of making an assessment must be their guide as to the manner of ascertaining values, and that the provisions of the Political Code, so far as they relate to the manner in which the value of property must be ascertained, are not in conflict with the provisions of the Constitution, and therefore in force at the present time.

Ordered that a writ of *mandamus* issue to the respondent, E. H. Allen, Assessor of the City of Stockton, in the County of San Joaquin, State of California, requiring and commanding him to assess, in the manner now provided by law, all property in said city, which it is declared in § 1 of art. 13 of the Constitution of this State, shall be taxed in proportion to its value.

MORRISON, C. J., ROSS, J., MYRICK, J., and McKINSTRY, J., concurred.

Mr. Justice McKEE, not having heard the argument in this case, did not participate in the decision.

THORNTON, J., dissenting :

In this case I respectfully dissent from the opinion of the other Judges of this Court as to the power vested in this tribunal by the Constitution of 1879, in relation to the writ of *mandamus*. The question to be considered may be stated as follows: Has this Court original jurisdiction in causes commenced in it by a writ of *mandamus* ? This must be determined by the Constitution adopted in 1879.

The jurisdiction of this Court is given and defined in article six of the Constitution. Section four of that article is in these words :

" The Supreme Court shall have appellate jurisdiction in all cases in equity, except such as arise in Justices' Courts ; also, in all cases at law which involve the title or possession of real estate, or the legality of any tax, impost, assessment, toll, or

municipal fine, or in which the demand, exclusive of interest, or the value of the property in controversy, amounts to three hundred dollars; also, in cases of forcible entry and detainer, and in proceedings in insolvency, and in actions to prevent or abate a nuisance, and in all such probate matters as may be provided by law; also, in all criminal cases prosecuted by indictment or information, in a court of record, on questions of law alone.  The Court shall also have power to issue writs of *mandamus*, *certiorari*, *prohibition*, and *habeas corpus*, and all other writs necessary or proper to the complete exercise of its appellate jurisdiction.  Each of the Justices shall have power to issue writs of *habeas corpus* to any part of the State, upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself, or the Supreme Court, or before any Superior Court in the State, or before any Judge thereof."

It is obvious from the most careless perusal of this section, that it was intended by it to confer appellate jurisdiction upon the Supreme Court.  The words " original jurisdiction " nowhere appear in it.  And if original jurisdiction is at all given it as to the writ referred to, it must be by implication from the words quoted above, which are used in conferring jurisdiction on this tribunal.

The appellate jurisdiction given is broad and ample, much more so than was conferred by the two previous Constitutions of this State.  This will be obvious from an inspection of the clauses by which such jurisdiction was and is conferred.  Following the clause conferring this enlarged appellate jurisdiction, are these words: " The Court shall also have power to issue writs of *mandamus*, *certiorari*, *prohibition*, *and habeas corpus*, and all other writs necessary or proper to the complete exercise of its appellate jurisdiction."

The collocation of this clause is suggestive.  It follows the grant of a defined jurisdiction, and points directly to that jurisdiction.  Power is given the Court to issue certain writs, "and all other writs necessary or proper to the complete exercise of its appellate jurisdiction."  This juxtaposition of the clauses referred to indicates an intention to confer the power given by

the last clause cited for the purpose of aiding, strengthening, maintaining, and rendering effective its appellate jurisdiction. In other words, the grant of power is equivalent to this : that after having created the Judicial Department as an independent one, and conferring upon it full powers as a Court of Appeal, a further grant of power is made to it, to issue the writs referred to, to maintain and conserve this independence ; so that, in case the Legislature should refuse to provide the necessary machinery to carry out this jurisdiction in the matter of appeals, this Court should be armed with all the writs referred to, and with power to issue them, to render the appellate jurisdiction effectual. The framers of the Constitution did not intend to leave the subject-matter of appeals to the Legislature alone—but so to confer it on this Court, that it might render the right of appeal effective, though the Legislature should fail to enact the requisite legislation, or should go so far as to attempt to clog, or impede, or take away the right.

It is no answer to this, to say that the Legislature has never at any former period of the history of the State refused to legislate on this subject.   This may be admitted.   Yet this fact, though persuasive to the conclusion that such a thing will never occur, is no guarantee that it may not, and the framers of the Constitution, and the people in ratifying it, intended to provide for an emergency which, though not probable, was yet possible. We know that unfortunate dissensions have arisen between co-ordinate departments of governments, and may arise again. Though all the unfortunate consequences which may result from such dissension, or from conflict, may not be foreseen and provided against, still this was foreseen, and it was wise to provide against it.

It is hardly necessary to say that all the writs mentioned may be and have been used by appellate Courts for the exercise of their jurisdiction.   Instances of this exercise often occur, and are frequently met with in the reports of causes.   The writ of *habeas corpus* was used in this way in *Ex parte Simonton*, 9 Porter, Ala. 383; and the same writ, together with the writ of *certiorari*, was held to be proper to bring up the decision appealed from in *Ex parte Croom and May*, 19 Ala. 561.   The

Supreme Court of the United States issued the writ of *habeas corpus* in the exercise of its appellate jurisdiction. (*Ex parte Hamilton*, 3 Dall. 17; *Ex parte Bollman et al.* 4 Cranch, 75; *Ex parte Kearney*, 7 Wheat. 38; *Ex parte Watkins*, 7 Peters, 568; *Ex parte Milburn*, 9 Id. 704; *Matter of Metzger*, 5 How. 176; *Matter of Kaine*, 14 Id. 103.) So also the writ of *mandamus*. (See *Marbury* v. *Madison*, 1 Cranch, 137; *Cowell* v. *Buckelew*, 14 Cal. 640; High on Extra. Remedies, § 531; and cases cited in notes to that section.) That courts have found such writs and other writs necessary to the proper and complete exercise of their appellate jurisdiction, is persuasive to show that in the minds of the framers of the Constitution such a grant was necessary and proper to make the jurisdiction effectual, and that the power was given for that purpose.

The construction of the Constitution is to be made upon an examination of the whole instrument, so that effect is to be given, if possible, to the entire instrument and every section and clause. In comparing the sections and clauses, it is not to be supposed that any words have been used without occasion, or without intent that they shall have effect as a part of the organic law. Courts must lean in favor of a construction which will make every word operative, rather than one which may make some idle and nugatory. (Cooley's Const. Lim. pp. 57–58.)

In this clause, then, every word demands attention. Not one should be overlooked or disregarded.

Section 5 of the article referred to defines the jurisdiction of the Superior Court. That jurisdiction is declared to be *original*, and it is made to embrace the writs mentioned in § 4. The language used conferring jurisdiction, " shall have power to issue," is the same as that used in § 4—and the same power is given by the same words to the Judges of the Superior Courts. The intention is manifest, that the jurisdiction is given as a part of the original jurisdiction of the courts mentioned in the section. It is not declared to be given in aid of their original jurisdiction. It follows that it is a part of it. In § 4 the power is conferred in aid of the jurisdiction before given. The only jurisdiction spoken of and embraced in words in the section is

*appellate.* And then the words conferring the power as to the writs mentioned follow immediately : " The Court shall also have power to issue writs of *mandamus, certiorari,* prohibition, and *habeas corpus,* and all other writs necessary or proper to the complete exercise of its appellate jurisdiction."

The casting of the clauses referred to in the same mold justifies the inference that the power was given in reference to the jurisdiction conferred in the prior part of the respective sections—as to the Supreme Court in relation to its appellate, and as to the Superior Court as a part of its original jurisdiction.

Effect is to be given to every word in the clause. The interpretation which would construe the clause in the 4th section as conferring original jurisdiction, leaves out of view the word *other,* or misinterprets its meaning.

The word " other " is a pronominal adjective, or adjective pronoun; that is to say, a word used instead of a name or noun. It is employed here to obviate the insertion of a long list of writs known to the law, and, it may be, of such writs as may be framed by the Court to carry out and effectuate its expressed jurisdiction. Instead of inserting such writs *eo nomine,* they are embraced in the expression " all other writs." These words constitute an ellipsis, to save the employment of other words, which were thus rendered unnecessary. The clause should be read as if the writs were inserted *eo nomine,* to get at its real meaning. Instead of all other writs, insert the name of the writs, and thus its significance is made apparent.

The Court shall have power to issue all writs (naming them) "necessary or proper to the complete exercise of its appellate jurisdiction." The word " other " thus is given effect to.

The other construction contended for is, that there are two separate and distinct grants of power in this clause. The contention is this : 1st. The Court shall have power to issue writs of *mandamus, certiorari, prohibition* and *habeas corpus,* as a grant of original jurisdiction; and, 2d. That the Court shall have power to issue all other writs necessary or proper to the complete exercise of its appellate jurisdiction.

In my opinion such a construction cannot be maintained. If it can be, it confines the power of this Court to issue writs

necessary or proper to the complete exercise of its jurisdiction on appeals, to *other* writs than those mentioned *by name* in the clause—for the grant there is of *other writs* than those especially enumerated. Such a construction cripples the Court in its most important functions, which are appellate, and allows the issuance of these writs for a purpose for which they are, to a great degree if not wholly, unnecessary, since the whole power contended to be vested in this Court, as original, can be exercised by it as fully and effectively on appeal, in the class of cases referred to, from the judgments of the Superior Courts.

But it is said that one Superior Court cannot send its mandate to another Court of the same class. This may be granted, and still it makes nothing for the argument. A sufficient answer to this is, that it was not intended by the framers of the Constitution, and the people who adopted it, that there should be in any tribunal a power in the nature of original jurisdiction to send any such writs to a Superior Court, since the jurisdiction on appeal was all sufficient.

It may be further contended, that it may be necessary to send a writ of the kind mentioned to a Superior Judge to compel him to try a cause. It does not appear that it was in the minds of those who framed or adopted the Constitution that a writ would ever be necessary for any such purpose. It may well have been concluded that the learned gentlemen who would fill the position of judges of such courts would require no such mandate or admonition to enforce the discharge of their duty to try a cause brought before them ; or if they did, that the compulsion to its discharge might well be left to be enforced by another tribunal, or by the judgment of those who constituted them their servants for the exercise of the high functions conferred upon them. Another answer to this position is this, that it can scarcely occur that the appellate jurisdiction, in its broad sense, will not be amply sufficient to correct any such dereliction on the part of a Judge of the Superior Court.

But it is said the grammatical arrangement of the clause referred to shows a grant of original jurisdiction. The rule on this subject is correctly stated by Johnson, J., in *Newell* v. *People*, 7 N. Y. 997, in these words :

" Whether we are considering an agreement between parties, a statute, or a constitution, with a view to its interpretation, the thing which we are to seek is *the thought which it expresses*. To ascertain this, the first resort in all cases is to the natural signification of the words employed, in the order of grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning, apparent on the face of the instrument, is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare, is the meaning of the instrument, and neither courts nor legislatures have a right to add to or take away from the meaning."

Is not the grammatical arrangement in accordance with the view above indicated, that no original jurisdiction is granted by the words of the clause?

The portions of the clause referred to are connected by the conjunction " and." Webster says of it : " *A particle*, which expresses the relation of addition. It may connect words merely, as three *and* four are seven, or full sentences, as the sun shines *and* the air is mild." ( *Webster's Dict.*, word " and." See edition of 1876.)

There is nothing here inconsistent with the view urged—on the contrary it sustains it. Whether viewed as a particle expressing the relation of addition, or as a mere connecting word of sentences or portions of a sentence, the conclusion is the same. "*All other writs*" are additions to those going before, or the two sentences are connected, and when so connected have reference to the same end or purpose—that is, " the complete exercise of appellate jurisdiction."

In fact there is only one sentence. The reading of the whole clause together shows this. If there are two sentences, the words " necessary or proper to the complete exercise of its appellate jurisdiction" must be cut off entirely from the words " the Court shall have power to issue writs of *mandamus, certiorari*, prohibition, and *habeas corpus*," and it must be held that

the former words have no relation to the latter.   Can it be held that this was the thought intended to be expressed in the clause ? If such is the interpretation, then the conclusion cannot be resisted, that the words " all other writs" exclude the writs referred to and named in the prior words of the clause.   Such an interpretation will scarcely be contended for.

· The repetition of the conjunction " and" before and after " *habeas corpus*" in the clause, can hardly be sufficient to set aside the conclusion above referred to.   In common speech, " and" is frequently so used, and is often found so employed by the best writers.

The word " and " is employed to connect several antecedents of relative words.   It is so used here, where the writs named " and all *other writs*" seem to be equally antecedent to the words to which they relate, " necessary or proper to the complete exercise," etc.   It is true that in strict grammatical construction, relative words refer to the last antecedent.   But this is not so, where the intent upon the whole instrument, or the context, shows to the contrary.   (See maxim, "*Ad proximum antecedens*," etc., Broom's Legal Maxims, p. 652, and cases referred to ; *Ex parte Bollman*, 4 Cranch, 94 and 95, per Marshall, C. J.)

Broom says :   " There are numerous examples in the best writers to show that the context may often require a deviation from this rule, and that the relative may be connected with nouns which go before the last antecedent, and which either take from it, or give to it some qualification"—referring to *Staniland* v. *Hopkins*, 9 M. & W. 192 ; *R.* v. *St. Mary's Leicester*, 1 B. and Ald. 329 ; *Peppercorn* v. *Peacock.* 3 Scott's N. R. 651.

In *Ex parte Bollman*, 4 Cranch, 94–5, the Court was called upon to construe the 14th section of the Judiciary Act of 1789. Marshall, C. J., delivering the opinion of the Court, and referring to the 14th section, says : " It is in these words : ' That all the before-mentioned Courts of the United States shall have power to issue writs of *scire facias*, *habeas corpus*, and all other writs, not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and

agreeable to the principles and usages of law.　And that either of the Justices of the Supreme Court, as well as Judges of the District Courts, shall have power to issue writs of *habeas corpus* for the purpose of an inquiry into the cause of commitment. *Provided*, that writs of *habeas corpus* shall in no case extend to prisoners in gaol, unless where they are in custody under or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify.'

" The only doubt of which this section can be susceptible is, whether the restrictive words of the first sentence limit the power to the award of such writs of *habeas corpus* as are necessary to enable the courts of the United States to exercise their respective jurisdictions in some causes which they are capable of finally deciding.

" It has been urged that, in strict grammatical construction, these words refer to the last antecedent, which is, ' all other writs not specially provided for by statute.'

" This criticism may be correct, and is not entirely without its influence : but the sound construction which the Court thinks it safer to adopt is, that the true sense of the words is to be determined by the nature of the provision and by the context."

The foregoing references are made to show that if I have erred as to the grammatical construction of the clause under consideration, the nature of the provision and the context is the safer and surer criterion by which to ascertain the tru sense of the words employed in the clause.

It is submitted that the nature and language of the clause, the context, and the grammatical sense, all indicate a grant of power not pertaining to original but appellate jurisdiction, and that all the words in the clause prior to the words " necessary or proper to the complete exercise of its appellate jurisdiction," are alike antecedent to the words just quoted, and that what is said by Broom in the passage above referred to may occur, has here occurred—the relative is " connected with nouns which go before the last antecedent, and either take from it, or give to it some qualification"; indeed, that all the nouns in the first portion of the clause, including " all other writs," are equally antece-

dents of the last portion of it. Just here, an instance that the context supplies the better criterion by which the meaning of a section may be determined than the grammatical arrangement or construction of it, is furnished in § 5 of article 6. In that section, which relates to the Superior Courts, near its close, we find this clause :

" Said courts and their judges shall have power to issue writs of *mandamus, certiorari,* prohibition, and *habeas corpus,* · on petition by or on behalf of any person in actual custody in their respective counties."

This clause, according to its grammatical arrangement, would limit the power by the courts and judges mentioned in it, to issue the writs enumerated " on petition by or on behalf of any person in actual custody in their respective counties." The grammatical construction would be such as just stated, following the grammatical arrangement of the words. No one would say that this interpretation would be what was intended by the framers of the instrument. The writs enumerated, other than that of *habeas corpus,* would not be required by or on behalf of a person in custody. The writ of *habeas corpus* would be amply sufficient to redress the wrongs of a person in confinement, and would be an ample remedy for a person so situated. The context of the entire section indicates beyond a doubt that the intention was to confer jurisdiction upon the courts and the judges mentioned, in cases where the writs named would be appropriate as remedies, and the construction should be in accordance with this manifest intention.

Again, it is a general rule, in the construction of writings, that where a general intent appears it shall control the particular intent. (See Cooley's Const. Lim. p. 58, note 4.) "Particular clauses of a contract are subordinate to its general intent." (Civ. Code, § 1,650.) The general intent manifest in this 4th section, under examination, is to grant *appellate* and not *original* jurisdiction. The intent to grant *original* jurisdiction, if at all apparent, can scarcely be held to be of a character which is not subordinate to the general intent so clearly manifest.

It is urged as a reason why the construction given to the 4th section of article 6 herein, should not be adopted, that if

such interpretation be adhered to there will be a class of cases in which the writs of *mandamus, certiorari,* and prohibition are issued for their adjudication by the Superior Courts, when the judgments of the last named courts will be final. In other words, that there will be no appeal from the judgments of the Superior Courts in such cases, as the appellate jurisdiction of this Court as defined in this section will not embrace them. And, therefore, if this Court cannot reach those cases by issuing the writs referred to on application to it, without recourse to the Superior Courts, the judgment of this Court cannot be procured at all in such cases.

It is admitted that this may be true as to a few cases, and, in consequence, it may be that some apparent inconvenience or hardship may result. But in reply to this argument, we urge that it is much better to submit to this inconvenience, which may be easily remedied by amendment, than by construction to insert something in the organic law, which its language does not justify. The inconvenience is uncertain, and if it exists at all, will be but temporary; while such a construction tends to lessen respect for the Constitution, and inflicts upon it a blow which results in permanent injury. " If the law does not work well," says Bronson, C. J., in *Oakley* v. *Aspinwall,* 3 N. Y. 568, "the people can amend it; and inconveniences can be borne long enough to await that process. But if the legislature or the courts undertake to cure defects by forced and unnatural constructions, they inflict a wound upon the Constitution which nothing can heal. One step taken by the legislature or judiciary, in enlarging the powers of the government, opens the door for another, which will be sure to follow; and so the process goes on until all respect for the fundamental law is lost, and the powers of the government are just what those in authority please to call them."

In looking into the matter under discussion, we turn, almost as a matter of course, to the clause as it stood in the former Constitution, under the amendment of 1863, in which shape it continued until changed by the present Constitution. (See art. 6, § 4, of the old Constitution.) By that section *appellate jurisdiction* was granted to the Supreme Court, and then comes the

clause to which attention is called. It is in these words: "The Court shall also have power to issue writs of *mandamus, certiorari,* prohibition, and *habeas corpus,* and also all writs necessary or proper to the complete exercise of its appellate jurisdiction." A comparison of the clauses in the two sections is suggestive. The difference is at once remarked. Instead of *"and also all writs"* in the old Constitution, we find the words " and all other writs " in the new.

This 4th section of the old Constitution came under consideration in 1864, in the case of *Tyler* v. *Houghton,* 25 Cal. 27. The point presented for determination was, whether the Supreme Court of that day had original jurisdiction under the section referred to, to issue the writ of *mandamus.* The Court came to the conclusion that this section conferred such jurisdiction. This decision may be regarded as settling the question under the former Constitution. It was approved in *Miller* v. *Board of Supervisors of Sacramento County,* 25 Cal. 96, and in *People* v. *Loucks,* 28 Id. 71. It remained undisturbed during the existence of that Constitution, and was the undoubted law of the land during the period the late Convention was in session. The members of that body, comprising a fair representation of the intelligent men of the State, and of the ablest and most learned members of the legal profession within its borders, must have been aware that such was the settled law of California. Notwithstanding all this, the clause referred to was changed, and changed, too, by the substitution of words, the meaning of which cannot be said to be the same as those in place of which they were inserted.

The inquiry at once is suggested, why the change? Why was it made, unless it was to change the organic law of the State?

The opinion in *Tyler* v. *Houghton* was drawn up by Sanderson, C. J., one of the ablest and most learned members of that able and learned Court. There was no dissent. The Court held that there were two independent grants of power in the clause. The first grant was, the power to issue the writs named, and the second an additional grant of power to issue *all* writs necessary or proper to the complete exercise of the appel-

late jurisdiction of the Court. This is a fair statement of the conclusions reached by the Court. (See Opinion, pp. 28 and 29 of the 25th Cal. Reports.)

I think I have shown that it cannot be maintained, by any method of argument, that there are two independent grants of power in the corresponding clause in the new Constitution. To do this would be to strike from the instrument the significant word " other," by ignoring its meaning entirely. Read as two separate and independent grants, we say of one that the power in the Court to issue writs necessary or proper to the complete exercise of its appellate jurisdiction, must be confined to writs other than the writs of *mandamus, certiorari,* prohibition, and *habeas corpus,* specifically named in the first portion of the clause. This inference in my view is just, from the premises indicated, and leads to a consequence which this Court cannot adopt, unless it divests itself of power among the most important of any with which the organic law invests it.

But it is said that under the old Constitution of 1849, the Supreme Court was allowed to issue these writs only in the exercise of its appellate jurisdiction; that it was so declared by that Constitution, and so adjudged by the Supreme Court organized under it; and the inquiry is made, if the Convention which framed the present Constitution desired to restrict this Supreme Court as the Supreme Court was restricted under the instrument of 1849, why had not the Convention used the same language?

In answer to this, I say that it cannot be maintained that the intention of the framers of the Constitution was to grant original jurisdiction by the clause referred to, because they did not use the same or equivalent words to those used in the Constitution of 1849, where confessedly no original jurisdiction was given in the matters of the writs referred to except the writ of *habeas corpus.* There are many ways of saying as plainly that the Court was not invested with original jurisdiction, as was said in the Constitution of 1849. And no inference can fairly be drawn that original jurisdiction was intended to be given, because the Convention did not use the same language in the present Constitution, identical with that used in the instrument

of 1849, when the phraseology employed as plainly indicated the intent that the writs named should not be resorted to in the exercise of a jurisdiction which is original.

We may well conclude that the late Constitutional Convention saw, what was apparent to every citizen of the State, that the then Supreme Court was crowded with causes brought before it on appeal, the proper disposition of which required all the time which the judges of that court could devote to hearing and deciding them; that much of the time required for the hearing and deciding such causes was consumed by applications for writs of *mandamus, certiorari,* and prohibition, from which much delay was unavoidably caused in passing on the causes appealed, and therefore, that that learned body, recognizing the evil consequences which had resulted from the delay referred to, determined to remove one of the chief causes of the delay, and to take away the original jurisdiction.

This, in my opinion, was one of the main reasons operating on the minds of the members of the Convention in making the change alluded to, and such is my answer to the inquiry, why such change was made.

For these reasons I have come to the conclusion that this Court has no original jurisdiction to issue the writ of *mandamus.* The same reasons obviously apply, and the same conclusion is reached, as to the writs of *certiorari* and prohibition. It has a qualified original jurisdiction as to the writ of *habeas corpus,* by reason of the power vested by the last clause of the section referred to in each member of the Court to issue the writ and make it returnable before the whole Court. As to this writ, it cannot initiate the proceedings as a matter of original jurisdiction, but can hear and determine a proceeding on such writ issued as just above pointed out.

Other considerations are suggested to sustain this view, but I forbear to urge them.

As to the other points considered in the opinion of the majority, I concur in the conclusions therein announced.